JOHN E. BOGGS v. E. B. CRENSHAW.*

(*Nashville.* December Term, 1927.)

Opinion filed June 30, 1928.

**PRIVILEGE TAX. BROKERS.**

Under our Revenue Act which declares it a privilege (and taxes as such), the soliciting or accepting orders, or contracts, or consummating deals for either the purchase or sale of any stock, bonds, cotton produce, or merchandise through any organized Exchange or through any member of such Exchange in this or any other state where any margin or partial payment is required of such purchaser or seller, and when the delivery of any such commodity aforesaid may be made in the future, and for which any such person, firm, or corporation, and any agent or employee of such firm or corporation as above set out and provided are compensated for such soliciting, accepting, contracting or consummating such deals, either by brokerage, commission or salary, the tax is levied against one who makes a business of soliciting or accepting orders or contracts of the designated character, and it is immaterial whether the margin or partial payment required of the purchaser or seller is paid to the broker in this state or to the member of the Exchange who executes the order on the Exchange, and a member of the Memphis Cotton Exchange who solicits orders for cotton and transmits same to a member of the New Orleans Cotton Exchange is liable for such tax.

Citing Acts 1927, Ch. 89, p. 311.

---

**FROM SHELBY.**

---

Appeal from the Chancery Court of Shelby County.—
HON. D. W. DeHAVEN, Chancellor.

SIVLEY, EVANS & McCADDEN, for complainant, appellee.

L. D. BEJACH, MARION S. BOYD, and NAT TIPTON, Assistant Attorney-General, for appellant, defendant.

MR. JUSTICE SWIGGART, delivered the opinion of the Court.

This suit was brought by John E. Boggs to recover of E. B. Crenshaw, County Court Clerk of Shelby County, a privilege tax paid under duress and protest.

The Chancellor overruled a demurrer interposed by the clerk, and, upon notice that no further pleading would be filed, rendered a decree in favor of complainant, from which the defendant has appealed.

The privilege tax in question is levied by the Revenue Act of 1927, chapter 89, under the heading "Futures." The privilege for which the tax is exacted is defined in the statute (page 311 of the Public Acts of 1927) as follows:

". . . the soliciting or accepting orders, or contracts, or consummating deals for either the purchase or sale of any stock, bonds, cotton produce, or merchandise through any organized Exchange or through any member of such Exchange in this or any other state where any margin or partial payment is required of such purchaser or seller, and when the delivery of any such commodity aforesaid may be made in the future, and for which any such person, firm, or corporation, and any agent or employee of such firm or corporation as above set out and provided are compensated for such solicit-

ing, accepting, contracting or consummating such deals, either by brokerage, commission or salary.''

The tax is required of one who makes a business of soliciting or accepting orders or contracts of the designated character. First, the order or contract must be for the purchase or sale of stocks, bonds, etc., through an organized exchange or through a member of such an exchange in this State or some other state; second, the order or contract must be one ''where any margin or partial payment is required of such purchaser or seller;'' third, the order or contract must be one on which the delivery of the commodity purchased or sold may be made in the future; and, fourth, the order or contract must be one for the soliciting or accepting of which the person or firm of whom the tax is required is compensated by brokerage, commission or salary.

Complainant is a member of the Memphis Cotton Exchange, which is maintained for the information and convenience of cotton dealers in and near Memphis, but orders for the purchase or sale of cotton for future delivery are not executed at the Memphis Exchange. Complainant is engaged in the business of soliciting orders from Memphis cotton dealers, for the purchase and sale of cotton for future delivery, to be executed by and through the firm of Mason, Smith & Company on the floor of the New Orleans Cotton Exchange, of which Exchange the firm of Mason, Smith & Company is a member.

The fair inference of the agreed statement of facts, which is incorporated in the original bill, is that the connection of complainant with the orders so solicited is terminated when such orders are transmitted by wire to the New Orleans firm. The facts were so construed by the Chancellor.

The complainant is described as one thoroughly familiar with the financial standing of cotton firms in Memphis, and in the Memphis territory. Accordingly, it is his duty to furnish Mason, Smith & Company with a statement of the financial rating and responsibility of such firms. Orders solicited by complainant from such firms are executed by Mason, Smith & Company, without the deposit of a margin, to the extent that their financial responsibility justifies the extension of credit to them. After the acceptance and execution of an order solicited by complainant, Mason, Smith & Company asserts and exercises the right to require the Memphis customer to make a deposit protecting its contract, whenever the credit of such customer with Mason, Smith & Company is exhausted by the fluctuation of the market price of cotton. This deposit is not made with complainant but is made by the customer directly with Mason, Smith & Company, although complainant is sometimes used as the medium through whom the demand for such a deposit is communicated by Mason, Smith & Company to its customer at Memphis.

Upon the facts stated, there is no contention by complainant but that three of the four conditions to his liability for the privilege tax, as above set out, are met by the agreed facts; but it is contended that the orders and contracts solicited by him are not orders and contracts "where any margin or partial payment is required of such purchaser or seller."

We construe the language, "where any margin or partial payment is required of such purchaser or seller," to be descriptive of the orders or contracts solicited. Manifestly, it is not the acceptance of a margin on a contract for future delivery that is taxed by the State.

The business taxed is the soliciting and accepting of or-
ders and contracts, to secure the performance of which
the broker who accepts the order requires the deposit
of security.   The fair construction of the language of
the statute is that the privilege tax must be paid by one
who solicits orders or contracts for future delivery, on
which orders or contracts a margin or partial payment
is required to be deposited by the person from whom
such orders or contracts are accepted.

It does not seem to us material whether the margin or
partial payment is required to be paid at the time the
contract or order is accepted, or whether such a margin
or partial payment is required to be paid subsequently
and during the pendency of the contract, prior to the
time the delivery of the stocks, bonds or commodities
purchased or sold may be demanded.   In either event,
the order or contract accepted is one on which a margin
or partial payment is required, and the condition of
the statute is satisfied.

In so construing the statute we are not unmindful of
the established rule that the statute imposing the tax
must be strictly construed against the taxing power, and
that the right to collect a tax must not be extended by
implication beyond the clear import of the statute by
which it is levied.   Our construction of the statute is
simply that the business described therein is subject to
the tax whenever the method of executing the orders
or contracts for future delivery includes the deposit of
a margin of partial payment required by the broker,
regardless of whether such deposit is required when the
contract is accepted or whether it is required and made
during the pendency and life of the contract.   We can
find nothing in the statute to indicate that the legisla-

ture intended to tax such a business when the margin is required to be paid at the time the contract is accepted and executed by the broker, and to exclude from the tax the same character of business when, because of the credit rating of the customer, the margin is not required to be deposited until the broker becomes apprehensive that his customer might not be financially able to meet his contractual obligations. The language of the statute is broad enough to include a business operated on either plan, without extending the meaning of the words of the statute by implication; and since we can find no substantial difference between the two methods of transacting a brokerage business, we are compelled to hold that both are within the application of the statute.

The learned Chancellor was of the opinion that the complainant is not liable for the tax because no margin or partial payment is ever required by Mason, Smith & Company, on any order or contract solicited by complainant, until after complainant's connection with each such order or contract has terminated; and at the time of complainant's connection with each such transaction it was purely a contract on credit and not on margin, with no compulsion on the part of the customer to remit the deposit which Mason, Smith & Company might subsequently demand.

We have hereinabove construed the statute as imposing a privilege tax on the business of soliciting or accepting orders and contracts, on which a margin or partial payment is required, and not upon the acceptance of a margin or partial payment to secure the performance of the contract. The agreed statement of facts fairly discloses that the extent of the credit which each Memphis concern will receive from Mason, Smith & Company

is controlled by the recommendation made by complainant to the New Orleans firm as to the financial condition of such customer. The statement of facts does not disclose that the extent of this credit is communicated to the customer at the time his order or contract is solicited, nor does it appear from the agreed facts that during the life of such a contract the New Orleans firm may not at will change the credit rating of its Memphis customer. At the time an order for the purchase of cotton, for delivery at a future date, is solicited by complainant, and accepted by his New Orleans associate, it must necessarily be within the contemplation of the parties, therefore, that the New Orleans firm may, at any time during the life of the contract, call for a margin or partial payment, in default of which the contract of the customer will be closed out at the prevailing market, and the customer charged with the loss accruing. This right of the New Orleans house may be exercised whenever necessary in its own opinion to protect itself against loss, and is not only an incident to the contract, but, in our opinion, characterizes it as a contract on margin. Although, as stated by the Chancellor in his opinion, the customer may decline to deposit the security demanded, under penalty of a forfeiture of his contract and liability for the loss accruing, the agreed statement of facts recites that such deposits are made by the Memphis customers, under the circumstances stated; and this statement is fairly to be construed as descriptive of the usual course of the contracts and orders solicited by complainant.

In our opinion, it is immaterial that complainant has no personal connection with the demand for and the receipt of the marginal or partial payments, required by

the New Orleans house to continue in force the contracts and orders originally solicited by complainant. The tax is imposed upon the business of soliciting orders on which such payments are required; and complainant's liability for the tax accrued when he engaged in the business of soliciting orders and contracts of the character described in the statute.

The agreed facts recited in complainant's bill clearly disclose complainant's liability.

A decree will accordingly be entered here, sustaining the demurrer and dismissing the bill, at complainant's cost.