## SOUTHERN PAC. CO. v. UTAH STATE TAX COMMISSION et al.

No. 6644.  Decided June 23, 1944.  (150 P. 2d 110.)

See 15 C. J. S. Commerce, Sec. 114.  11 Am. Jur. 88; 22 Am. Jur. 816.

JUDD, RAY, QUINNEY & NEBEKER, of Salt Lake City, and H. H. McELROY, of San Francisco, for plaintiff.

GROVER A. GILES, Atty. Gen. and J. LAMBERT GIBSON and WAYNE L. CHRISTOFFERSON, both of Salt Lake City, for defendants.

McDONOUGH, Justice.

Petitioner, hereinafter referred to as the Company, a Kentucky Corporation, operates trains through Utah between San Francisco and Chicago. In order to provide adequate meals at the proper and necessary times petitioner carries on its interstate trains operating through and in Utah dining cars in which meals are served at proper and necessary meal times to the traveling public. The service of such meals in dining cars is highly desirable in order to avoid delays in meal service which might result from the failure of trains to meet stations where meals could be served at proper and necessary meal times. Such service on dining cars is also desirable and necessary in order to avoid the delays resulting from the stopping of trains to permit passengers to de-train and secure meals at meal stops. The cost of meals served in taxpayer's dining cars is substantially greater than the revenue received therefrom but, notwithstanding, the serving of meals upon moving trains is the most economical method of providing meal service to passengers. The operation of dining cars upon moving trains is also the most desirable method of providing meals for the traveling public because of the fact that carriers have little or no control over meal service provided at stations by private lunch counters, dining rooms or restaurants.

In providing such train meal service it is necessary for the Company to carry on its dining cars over through runs or between other terminals of lines over which through train cars are operated, dining car crews consisting of stewards, cooks and waiters. Such dining car crews must be employed during the periods while meals are prepared and served.

The Company furnishes free meals to its dining car crews. The foodstuffs consumed in furnishing such free meals are usually placed on dining cars at San Francisco or Chicago or other terminals east of Utah or they are secured en route at stations outside of Utah.

No sales or use or other excise tax at the source is imposed or paid by taxpayer upon its purchases of such foodstuffs. That Company collects and remits sales tax to the State of Utah upon all sales of meals made upon its trains to passengers while said trains are in the State of Utah.

The defendant made a deficiency assessment under the Utah Use Tax Act of 1937, Chapter 16, Title 80, U. C. A. 1943, representing two per cent of the sales price of foodstuffs purchased by the Company and used and consumed by it in furnishing meals to such dining crews. Certiorari was issued to review this assessment.

Petitioners attack the validity of the assessment on the following grounds: (1) The imposition of such tax is contrary to and not authorized by the terms of the Utah Use Tax Act of 1937; (2) the use tax as sought to be imposed is a tax directly upon the privilege of using materials and supplies in carrying on interstate commerce and constitutes and unlawful burden on such commerce in violation of the commerce clause of the Federal Constitution; (3) such tax is imposed upon materials and supplies being carried and transported in the course of an interstate journey through the state of Utah and constitutes an unlawful burden on interstate commerce.

By the provisions of Sec. 3, Chapter 16 of Title 80, U. C. A. 1943, there is imposed "an excise tax on the storage, use or other consumption in this state of tangible personal property

purchased \* \* \* for storage, use or other consumption in this state at the rate of two per cent of the sales price of such property." Section 80-16-4 enumerates various specific exemptions, including property subject to sales tax, and also:

"(b) Property, the storage, use or other consumption of which this state is prohibited from taxing under the constitution or laws of the United States of America or of this state; property stored in the state of Utah for resale, consumption or use in some state other than the state of Utah.

"(c) Property brought into this state by a nonresident for his or her own personal use or enjoyment while within the state."

The argument of petitioner in support of its first contention, i. e. that the imposition of the assailed levy is not authorized by the terms of the Use Tax Act, points particularly to the fact that the act provides for a levy on the storage, use or other consumption in this state of tangible personal property *purchased for storage, use or other consumption in this state.* The property here attempted to be made the subject of the tax was not, it is asserted, purchased for use in Utah or in any other state. It was purchased for an interstate use; for consumption in the course of an interstate journey; in short for the purpose of use in interstate commerce. In fact it was so used. Hence, there was not within the intent of the act any purchase for use in the state of Utah or any use in the state. It is further pointed out that though consumption in interstate commerce during the time carrier is moving in Utah in the course of its interstate journey be considered use in the state; nevertheless, the use here sought to be taxed being but a fractional use, is not, within the intendment of the act, taxable.

Anent fractional use, it is pointed out that the eating of the meals by the crew, or the furnishing of the meals to the crew by the railroad, whichever be considered the taxable event, is but part of the use or consumption of the incorporated commodities by the carrier. The foodstuffs withdrawn from the commissary at Chicago or Oakland, and eventually furnished as meals to the crew while in this state, are stored, refrigerated and in many instances cooked

and otherwise prepared for the table in other states before crossing the boundaries of Utah. Each of such acts of preservation and preparation is a partial use by the railroad. It is not contemplated, petitioner insists, that such partial consumption within the state be subject to the imposed levy.

We think the contention that the imposition of the tax on the transaction in question is not within the intendment of 80-16-3, U. C. A. 1943, must be rejected and that, if otherwise valid, the levy is authorized thereby. Use is defined by the act in question to include "the exercise of any right or power over tangible personal property incident to the ■ ■ ownership of that property," except sale in the regular course of business. 80-16-2, U. C. A. 1943. Unless exempted under the provisions of 80-16-4 of the act or prohibited by constitutional provisions, the use, storage, or other consumption of tangible personal property in Utah, purchased here or elsewhere, is liable to the use tax. The expression "purchased for storage, use or consumption in this state" evidently was used to make the levy mesh with the provision which exempted property stored in this state but purchased for resale or use in another state. The section clearly means purchased for storage, use or other consumption and stored, used or otherwise consumed in this state except as in Section 80-16-4 provided. Thus the property here involved though purchased for use in interstate commerce, but used in Utah, though in interstate commerce, is taxable, unless exempted or constitutionally prohibited.

Before proceeding to consideration of the constitutional question involved, an opinion contained in the decision of the defendant Commission and intimated in its brief as sound, to the effect that the consumption or use of the foodstuffs here involved is not a consumption or use by ■ petitioner in furtherance of interstate commerce because it is a consumption in furtherance of the business of activity of its dining car service, may be summarily dealt with. Petitioner's dining service is as essential a part of its function as a carrier as is any other activity concerned with transporting passengers or freight. The practical neces-

sity of having dining car service and of furnishing meals to the dining car crew, is amply demonstrated by the stipulation of facts filed by the parties, the substance of which is contained in the statement of facts set out hereinabove.

We think it quite clear that the use of the foodstuffs in question is a use by petitioner in interstate commerce—quite as much so as is the use of transported lubricants to lubricate the moving parts of a train or fuel carried to supply its motive power. We so assert at the outset, since it is a fact, to avoid involvement in the discussion of imposts on a related but a distinctly different kind of event or activity connected with an affecting interstate commerce.

The furnishing in Utah of the prepared meals to the crew differs then from an event which takes place before transportation in interstate commerce of goods in relation to which the event occurs, or one which occurs in relation thereto after such transportation ceases. The event here sought to be taxed is one in furtherance of interstate commerce, the consumption of the goods not merely in the course of an interstate journey but in interstate commerce. Indeed it is an expense involved in the transportation of passengers. We need not concern ourselves, therefore, with cases dealing with the taxability of income derived from interstate commerce since here is involved a levy on outgo rather than income.

Under the foregoing identification of the subject taxed, is the levied assessment prohibited by Article 1, Section 8, Clause 3 of the Constitution of the United States? It is petitioner's contention, as hereinabove recited, that it is.

That the taxation by a state of articles in the course of their movement in interstate commerce is foreclosed by such clause is well settled by a line of cases extending from the decision in the case of *In re State Freight Tax*, 15 Wall. 232, 21 L. Ed. 146 to *Carson Petroleum Co.* v. *Vial*, 279 U. S. 95, 49 S. Ct. 292, 73 L. Ed. 626 in the latter of which cases most of the cases dealing with the subject are discussed. But defendant Commission takes the position that even conceding such to be the law, there

occurs in the state of Utah a taxable event aside from the mere transportation of the property in question, viz., the consumption in Utah of such property; and that this event being intrastate may be made the subject of the questioned levy in the absence of resulting multiple taxation, or the possibility thereof, and of discrimination against interstate commerce. It is argued that the trend in the opinions of the Supreme Court of the United States has been during the decade past to limit the restraint of the commerce clause on state taxation to such as effect one or the other or both of such results. Especial emphasis is given in its brief to the rationale of *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876; and *McGoldrick* v. *Felt & Tarrant Mfg. Co.*, 309 U. S. 70, 60 S. Ct. 404, 84 L. Ed. 584. As to the rationale of these opinions and of others predicting the emphasis there laid, see Powell: New Light on Gross Receipts Taxes, 53 Harvard Law Review 909; Lockhart: Gross Receipt Taxes on Transportation, 57 Harvard Law Review 40; and Trayner: State Taxation and the Commerce Clause, 28 Calif. Law Review 168.

In *McGoldrick* v. *Berwind-White Coal Mining Co.*, supra, the question of the validity and applicability of the New York City sales tax was involved. The mining company maintained a sales office in New York where orders for specific grades of coal were placed, the orders were filled at the mines in Pennsyvlania, and shipped directly from the mine to the purchasers in New York. It was held that the New York City sales tax as applied to such sales was not a violation of the commerce clause of the Federal Constitution. In *McGoldrick* v. *Felt & Tarrant Co.*, supra, orders for merchandise were taken in New York by agents of an out-of-the-state manufacturer, subject to approval of vendor, and delivery was made to purchasers in New York by direct interstate shipment to them, or by interstate shipment to some agency in New York for subsequent delivery to the purchaser after inspection, tests, and adjustments. The purchaser apparently had the right to determine whether

the shipment should be made directly to him or to the agency for inspection. On the authority of *McGoldrick* v. *Berwind-White Coal Mining Co.*, supra, the sales were held to be subject to the New York City sales tax.

In both of these cases, the court was careful to point out that it was dealing with an *intrastate* event. Thus in the Berwind-White case [309 U. S. 33, 60 S. Ct. 398, 84 L. Ed. 565, 128 A. L. R. 876] the court stated:

"The rationale of the [J. D.] Adams Mfg. Co. case [*J. D. Adams Mfg. Co.* v. *Storen*, 304 U. S. 307, 58 S. Ct. 913, 82 L. Ed. 1365, 117 A. L. R. 429] does not call for condemnation of the present tax. Here the tax is conditioned upon a local activity delivery of goods within the state upon their purchase for consumption. It is an activity which apart from its effect on commerce, is subject to the state taxing power."

In the Felt & Tarrant Mfg. Co. case [309 U. S. 70, 60 S. Ct. 405, 84 L. Ed. 584], and its companion case decided therewith it is said:

"In both cases the tax was imposed on all the sales of merchandise for which orders were taken within the city and possession of which was tranferred to the purchaser there. Decision in both is controlled by our decision in the Berwind-White Company case."

As pointed out in *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 57 S. Ct. 524, 526, 81 L. Ed. 814, when goods imported in interstate commerce have become a part of the general mass of tangible property in the state of destination, after the interstate shipment has terminated, that ■ state may subject such goods to a property tax or to a tax on their use, since the privilege of use is only one of the privileges which make up the entire aggregate of property rights or ownership. The Supreme Court stated that inasmuch as the state could tax such rights collectively, it could tax some of such rights of ownership separately. It also pointed out that a tax upon the use of property after transit in interstate commerce has been completed, which is made comparable to taxes on the purchase or use of commodities purchased within the state,

is not a tax upon the interstate shipment of such goods nor a tax on an incident of interstate shipment, for the interstate commerce features and incidents cease to exist upon the termination of the shipment.

The question for decision posed at the outset of that opinion is:

"Do these consequences which must have been foreseen, necessitate a holding that the tax upon the use is either a tax upon the operations of interstate commerce or a discrimination against such commerce obstructing or burdening it unlawfully?"

In the course of the opinion, page 582 of 300 U. S., 57 S. Ct. at page 526, 81 L. Ed. 814, the necessity of a taxable state event upon which a state tax may operate is definitely indicated:

"Things acquired or transported in interstate commerce may be subjected to a property tax, nondiscriminatory in its operation, when they have become part of the common mass of property within the state of destination. * * *"

Again at page 583 of 300 U. S., 57 S. Ct. at page 527, 81 L. Ed. 814, the following observation is made:

"A tax upon a use so closely connected with delivery as to be in substance a part thereof might be subject to the same objections that would be applicable to a tax upon the sale itself."

In *Southern Pacific Co.* v. *Gallagher*, 306 U. S. 167, 59 S. Ct. 389, 83 L. Ed. 586, it was held that a state use tax on the storage and use of tangible personal property brought into the state by a railroad company engaged in interstate commerce, temporarily stored in the state for purposes of protection until installation or use, and intended for immediate or subsequent installation or use as a part of the interstate transportation facilities, does not violate the commerce clause of the Federal Constitution. It was held there that the retention and installation of the property are intrastate taxable events and that there is a taxable moment when the property has reached the end of its interstate

haul and has not yet begun to be consumed in interstate operation of the railroad. The same principle was announced in *Pacific Telephone & Telegraph Co.* v. *Gallagher*, 306 U. S. 182, 59 S. Ct. 396, 83 L. Ed. 595, wherein the telephone company contended that the imposition of a use tax on telephone equipment purchased outside of the state on specific orders for installation at particular places within the state, and on maintenance and repair goods held as standby supplies to meet fluctuating demands and emergencies, violated the commerce clause inasmuch as such equipment was all intended for interstate service. The Supreme Court held that the retention and installation of such equipment are rights of ownership in the taxing state, exercised after the termination of the interstate transit of the property and before the use or consumption on interstate telephone and telegraph systems had commenced.

In *Southern Pacific Co.* v. *Gallagher*, supra, the court after referring to two lines of authority which is considered helpful in considering the effect of the tax under examination, stated, 306 U. S. 167, 59 S. Ct. at page 393, 83 L. Ed. 586:

"The principle illustrated by the Helson [and Randolph] Case [*Helson and Randolph* v. *Commonwealth of Kentucky*, 279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683], forbids a tax upon commerce or consumption in commerce. The Wallace Case [*Nashville, C. & St. L. Ry. Co.* v. *Wallace*, 288 U. S. 249, 53 S. Ct. 345, 349, 77 L. Ed. 730, 87 A. L. R. 1191] and precedents analogous to it, permit state taxation of events preliminary to interstate commerce. The validity of any application of a taxing act depends upon a classification of the facts in the light of these theories. In the present case some of the articles were ordered out of the state under specifications suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon 'use or storage,' no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and *had not begun to be consumed in interstate operation.* At that moment, the tax on storage and use—retention and

exercise of a right of ownership, respectively—was effective. The interstate movement was complete. * * * It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a *tax on its operations as such*, is an interference." (Emphasis added.)

In each of the foregoing cases in which sales tax or use tax was held applicable, it was held that the tax was on a taxable state event after the interstate shipment had terminated and prior to any subsequent use in interstate commerce. That the Supreme Court adheres to previous decisions striking down state legislation which attempts to tax the interstate transportation of goods themselves or to tax materials consumed in interstate transportation of goods or passengers, is, we think, apparent from a reading of *McCarroll* v. *Dixie Greyhound Lines*, 309 U. S. 176, 60 S. Ct. 504, 506, 84 L. Ed. 683. The State of Arkansas imposed a tax on gasoline transported into that state in excess of 20 gallons for use as fuel in such truck or vehicle. The tax was held to be a forbidden burden on interstate commerce. The court pointed out that the mere fact that the act provided that the tax collections from such source should be allocated to state highways, did not validate the tax, since the tax did not have any fair or reasonable relationship to the use of the highways. In the opinion by Mr. Justice Stone (denominated a concurring opinion, but expressing the views of the majority court, it is said:

"Since the subject taxed, gasoline introduced into the state in the tank of a vehicle, for use solely in propelling it in interstate commerce, *is immune from state taxation except for a limited state purpose, the exaction of a reasonable charge for the use of its highways*, it is not enough that the tax when collected is expended upon the state's highways. It must appear on the face of the statute or be demonstrable that the tax as laid is measured by or has some fair relationship to the use of the highways for which the charge is made." (Emphasis supplied.)

In the instant case, it could hardly be said that the interstate transportation of goods actually comes to rest, for the goods are consumed in the process of interstate commerce. The interstate journey is not completed in Utah as far as the movement of the train and the operations of its crew are concerned.

It appears to us that inasmuch as the food is furnished to the members of the dining car crews free of charge and at the expense of the company, and that the furnishing of such free meals is an incident connected with the performance of the duties of such employees in interstate commerce, such expense of furnishing such meals to such persons is just as much a part of the expense of interstate transportation of passengers as is the cost of fuel consumed in the operation and movement of the train. It cannot be said that the transportation of such food and materials actually terminates in the State of Utah, for the use or consumption (according to the admissions of the Tax Commission) occurs during the course of the interstate run of the trains before the train has reached its destination. The consumption or use on the train while the train is moving through Utah is wholly unlike the unloading of a particular article of merchandise at some point in Utah. In the latter case the interstate transit of goods may terminate by being taken off the train and by being delivered from the custody of the railroad to the warehouse or consumer. In the case now before us, the food and materials never leave the custody of the railroad company, since they are used and consumed by employees during the course of their employment on an interstate trip. Like the ice in the refrigerator cars which is consumed during the trip and a portion of it consumed while traversing this state, and like the fuel in the tender consumed while crossing this state on the transcontinental journey, the food consumed by the employees whose duties require them to be on the train to render efficient dining car service to passengers is consumed as a part of the interstate transportation operation.

Since any attempt to tax the consumption of such food by employees who receive the same without compensation in the performance of their duties in interstate commerce, would be unlawful under the commerce clause ■ of the Constitution of the United States, of America, the Use Tax Act specifically though needlessly, exempts such use or consumption from the use tax. The order of the Tax Commission is therefore vacated and annulled. Costs to petitioner.

LARSON and WADE, JJ., concur.

WOLFE, Chief Justice.

I concur on the specific ground that the storage of the food for the dining porters was an integral part of interstate movement and inseparable from it, hence not a state taxable event. The use of the food in the form of consumption by the waiters was also not a state taxable event. No taxable movement in the course across the state occurred which permitted the state to tax the use, storage or consumption. As to whether the so-called "free" meals served to the waiters may not in fact have been part of their wage compensation so as to make the furnishing of meals to them in reality a sale in the same category as the sale of meals to passengers is not before us. In such respect the similes used in the opinion "that the use of the foodstuffs in question is a use by the petitioner in interstate commerce— quite as much so as is the use of tranported lubricants to lubricate the moving parts of a train or fuel carried to supply its motive power" would hardly be applicable. If this were a proceeding for the collection of a sales tax and the furnishing of meals were held to be a sale, it would differ from the use of lubricants or fuel which are not respectively sold to the axle nor to the tender nor the fire box. I think it unnecessary in view of the ground of my concurrence to concur in that part of the opinion relating to partial use in the state of Utah. In this case, it occurs to me that each of the various operations relating to the food finally consumed

by the porters may have been itself an integral and inseparable part of the interstate journey, and not at any place en route a taxable event, any more than any event in Utah concerning this property is a taxable event to which the use tax may attach. But it is unnecessary to so determine.

MOFFAT, J., deceased.