## UNION PAC. R. CO. v. UTAH STATE TAX COMMISSION et al.

No. 6909. Decided June 7, 1946. (169 P. 2d 804.)

See 15 C. J. S., Commerce, sec. 112; 47 Am. Jur. 251. Violation of commerce clause by use tax, notes, 129 A. L. R. 224; 153 A. L. R. 613.

*H. B. Thompson, Robert B. Porter, W. Hal Farr,* and *Bryan P. Leverich,* all of Salt Lake City, for plaintiff.

*Wayne L. Christoffersen,* of Salt Lake City, for defendants.

PRATT, Justice.

A constitutional question arising out of the application of the use tax law of this state.

The Union Pacific Railroad Company purchased eight Diesel engines — Nos. DS-1017-1020-1021-1022-1024-1030-1031- and 1032. It used them in Nebraska in the switching and hauling of interstate cars and intrastate cars. Subsequently it transferred these engines to its Salt Lake City terminal, where, again, they were used in the switching of interstate cars and intrastate cars. The engines came from Nebraska upon their own power, and before use were inspected for refueling and repairing at the railroad's roundhouse. For all practical purposes it is impossible to segregate the interstate switching from the intrastate switching.

The Utah State Tax Commission assessed a use tax upon these engines based upon their purchase price. The railroad requested and received a review of that assessment. Upon that review, the Tax Commission made findings of fact among which is found:

"That a period of time existed before said Diesel engines became engaged in the movement of interstate commerce within the State of Utah, during which said engines were at rest in Utah and removed from operation in interstate commerce."

Upon this finding the Tax Commission concluded:

"That a taxable moment occurred at which time the State of Utah acquired jurisdiction over the Diesel engines in question."

The Tax Commission concluded also that the Railroad Company was liable for the tax and ordered its payment with interest.

The Railroad Company has brought the matter before this court on certiorari. There is no dispute as to facts, as they were mostly stipulated.

The sections of the statute involved read:

"80-16-2. Definitions.

"The following words, terms and phrases when used in this act have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning.

"(a) 'Storage' means and includes any keeping or retention in this state for any purpose except sale in the regular course of business of tangible personal property purchased from a retailer.

"(b) 'Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business. * * *"

"80-16-3. Use Tax.

"There is levied and imposed an excise tax on the storage, use or other consumption in this state of tangible personal property purchased on or after July 1, 1937, for storage, use or other consumption in this state at the rate of two per cent of the sales price of such property.

"Every person storing, using or otherwise consuming in this state tangible personal property purchased shall be liable for the tax imposed by this act, and the liability shall not be extinguished until the tax has been paid to this state."

"80-16-4. Exemptions.

* * *

"(b) Property, the storage, use or other consumption of which this state is prohibited from taxing under the constitution or laws of the United States of America or of this state; property stored in the state of Utah for resale, consumption or use in some state other than the state of Utah."

A recent decision of this Supreme Court entitled *Southern Pacific Company* v. *Utah State Tax Commission et al.*, 106 Utah 451, 150 P. 2d 110, 114, written by Mr. Justice McDonough sets out the law applicable to these sections of our code. A number of the cases cited by counsel in the present case are discussed in that decision. The principles of that decision are incorporated herein merely by reference.

Counsel for the Tax Commission upholds the Commission decision and order, as follows:

"In the immediate case, the assignment to use in Utah, the appropriation to use in Utah, together with the fact that *the diesel engines in question have been withdrawn from interstate switching activities in Omaha* and a period of time elapses before they are further engaged in interstate switching activities in Salt Lake yards, renders the property subject to tax within the definition of the words 'storage' and 'use' contained in our Use Tax Act." (Italics added.)

This statement, however, contains a conclusion (italicized above) which it is believed is not justified by the facts. It is, of course, true that time elapsed between the use in Nebraska and the use in Utah; but what is the ■ evidence of withdrawal in Nebraska from interstate activities? Merely the transfer from Nebraska to Utah—in other words, the elements of time and distance?

If those engines were withdrawn in Nebraska from interstate commerce then, of course, a good argument can be made to the effect that their shipment or transfer to Utah for use would place them back in interstate commerce in a position analogous to equipment shipped into Utah for assembly and use, and, as stated by Mr. Justice McDonough in the cited case (referring to the holding of the *Henneford* v. *Silas Mason Co.* case, 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814)

"* * * after the interstate shipment has terminated, that state may subject such goods * * * to a tax on their use * * *."

. Furthermore such a conclusion would not, of necessity, be inconsistent with the fact that the engines used their own power to pass from Nebraska to Utah instead of being hauled or carried. But these are matters that need not be solved here.

These engines were instrumentalities in interstate commerce use in Nebraska. They were transferred to Utah. Does that evidence a withdrawal in Nebraska from interstate commerce? The testimony in this case indicates that the switching of cars at all terminals is similar; and that it is impossible to segregate interstate shipping from intrastate shipping. To test the accuracy of a conclusion that

such a transfer evidences a withdrawal from interstate commerce, let it be assumed that the Omaha terminal and the Salt Lake terminal were together as one large square. It must be conceded, under the facts of this case, that each movement of the engines within that square from one interstate car or set of cars to another would be a movement incident to and in furtherance of interstate commerce. Such use of the engines would be as instrumentalities in that commerce. Assume, then, a line drawn from the north to the south through the center of that square, and the resultant rectangles named Omaha terminal (for the one on the east) and Salt Lake terminal (for the one on the west). Obviously, the passing over this line by these engines would not deprive their use of its interstate character. And, finally, it seems obvious that the width of the center line would make no difference—the line could, in fact, be evidenced by intervening land—such as another state or states. The character of the engines' use would not change because of the time or distance consumed by the engines in passing between actual switching operations. Neither the element of time nor that of distance, under the circumstances of this case, breaks the continuity of the interstate use of the engines, as such instrumentalities.

In the cited case, Mr. Justice McDonough uses an expression which is believed appropriate to the present case as well. He said:

"The event here sought to be taxed is one in the furtherance of interstate commerce  *  *  *."

Clearly the movements of these engines either within the terminal or from terminal to terminal were in the furtherance of interstate commerce.

There is some suggestion in the briefs that the inspection and overhauling evidence a period of rest after interstate shipment, upon which the state may rely for judisdiction to assess a use tax. We cannot agree with that suggestion. The maintenance of the instrumentalities of interstate commerce in the course of their use in that commerce is as

much in the furtherance of that commerce as the actual operation therein. The cited case passes upon this point in its comparison between the food used, and the lubrication and fueling of the train.

Counsel for the Tax Commission has invited attention to what he terms the liberalized power afforded the states to enable them to collect from interstate commerce its just share of the burdens of taxation. Conceding that interstate commerce should bear its share of those burdens, the difficulty arises in drawing the line between an assessment of that just share and the assessment of a prohibitive tax. In line with this difficulty the following remarks from the opinion of Mr. Justice Rutledge of the United States Supreme Court in the recent case of *Nippert* v. *City of Richmond*, 66 S. Ct. 586, 589 are appropriate:

"If the only thing necessary to sustain a state tax bearing upon interstate commerce were to discover some local incident which might be regarded as separate and distinct from 'the transportation or intercourse which is' the commerce itself and then to lay the tax on that incident, all interstate commerce could be subjected to state taxation and without regard to the substantial economic effect of the tax upon the commerce. * * * All interstate commerce takes place within the confines of the states and necessarily involves 'incidents' occurring within each state through which it passes or with which it is connected in fact. And there is no known limit to the human mind's capacity to carve out from what is an entire or integral economic process particular phases or incidents, label them as 'separate and distinct' or 'local,' and thus achieve its desired result."

In view of the fact that the subject matter discussed is decisive of the case, the other issues raised will not be discussed.

The order of the Tax Commission is vacated and annulled. Costs to petitioner.

LARSON, C. J., concurs.

WADE, Justice.

I concur.

The only question here is: Was there a taxable moment after these engines reached this state? These engines were not withdrawn from use and consumption as an instrumentality of interstate commerce prior to their reaching this state. They came into this state on their own power, and on their own wheels. If they were propelling a train of cars as well as their own weight when they entered this state then there is no conceivable use and consumption to which any instrumentality could be placed that would be more clearly a use and consumption in interstate commerce than they would be performing at that time. The situation is the same if they were propelled into this state by another engine on their own wheels. In such case the wheels were carrying the machinery of which they were composed into the state and thus performing the same function that another car would perform had these engines been dismantled and placed on such other car and hauled into the state. Any car hauling a load of freight into this state would be performing a function in interstate commerce. Or if they were propelling their own weight into this state their wheels would be performing the function of another car if they were hauled into the state on such other car, and their engines would be performing the function of the engine which pulled them into the state in case they were hauled into the state on another car. Thus when these engines entered this state they were performing functions and being used and consumed in interstate commerce.

Did the inspection of these engines for refueling and repairing at the roundhouse before they were put to use as switch engines after they entered the state constitute a taxable moment during which the interstate function which they were performing when they entered the state had ceased and their functions in interstate commerce as switch engines had not commenced? Counsel for the state strenuously urge that it did. They rely for support of their posi-

tion on the U. S. Supreme Court decisions of *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167, 59 S. Ct. 389, 83 L. Ed. 586, and *Pacific Telephone & Telegraph Co.* v. *Gallagher,* 306 U. S. 182, 59 S. Ct. 396, 83 L. Ed. 595, and *Southern Pacific* v. *State Board of Equalization,* decided by the Sacramento County Superior Court, which was appealed to the District Court of Appeals but later dismissed. This was a case of original jurisdiction and is not reported so we will give it no further consideration.

In *Southern Pacific Co.* v. *Gallagher,* supra, the railroad company purchased outside of the state of California for the operation of its road, rails, equipment, machinery, tools and office supplies, for the purpose of replacing, repairing or installing, damaged or wornout equipment and making improvements and extension in accordance with previously determined plans. The storage of such goods was merely incidental. Much of the material was fabricated for special use in the transportation system, then shipped into California and installed upon arrival. The movement from the loading place to the final placement was as nearly continuous as managerial efficiency can contrive. No new rolling stock was involved. Where rolling stock was repaired by the use of such materials it again moved in interstate transportation the same as do cars after being stocked with supplies.

The Supreme Court of the United States held that the articles which were ordered according to specifications and were suitable only for utilization in transportation facilities and were installed immediately upon arrival at the California destination, constituted a case where no taxable moment occurred in the state of California if any such a situation was presented in that case. It further held that at the time when such articles reached the end of their interstate transportation, and had not begun to be consumed in interstate operation at that moment the tax on storage and use in California became effective because there was necessarily a moment after which the interstate movement was completed and the interstate consumption had not yet

begun. The *Pacific Telephone & Telegraph Co.* v. *Gallagher,* supra, presented a similar situation involving telephone and telegraph instruments, and the holding was the same.

The state urges that those cases cannot be distinguished from this case. That here there was a taxable moment when after the engines came into this state and their movement in interstate commerce had ended they were withdrawn from consumption and use in interstate commerce by being taken to the roundhouse for inspection and repair before being used as switch engines within this state. In my opinion there is a clear distinction between those cases and this one. There the materials and appliances came into the state of California merely as freight, they were not then being used or consumed as intrumentalities in interstate commerce, but were merely being hauled as freight in an interstate movement. After such interstate movement was ended there was of necessity a period of time required before they were installed as a part of the transportation equipment and their use and consumption in interstate commerce could commence. And it was only during such time that the taxable moment occurred. Here these engines entered this state installed and equipped and being used and consumed in interstate commerce. The fact that there was a short period of time after they entered this state during which they were not actively engaged in or being used and consumed in interstate commerce because they were temporarily standing still and inactive does not constitute a withdrawal from interstate commerce. If that were the case then the fact that no train was passing over a track would constitute such a withdrawal of the track from interstate commerce until another train passed. Nor does the fact that these engines were taken to the roundhouse for inspection and repair constitute such a withdrawal. All of this time these engines were on the tracks equipped and except for some possible minor defect were ready for use and intended for such use and consumption in interstate commerce, and such inspection and repair does not have the effect of withdrawal from

such commerce. I therefore concur that there was no taxable moment in this case.

McDONOUGH, J., concurs for the reasons states in the opinions of PRATT and WADE, JJ.

WOLFE, Justice (concurring).

The inspection and refueling operation at the roundhouse in Salt Lake City was at the end of one interstate commerce movement and at the beginning of another but it was one phase of total and continuous interstate operation. The movement from Nebraska to Utah and the subsequent use of the engine in Utah was a total and continuous interstate operation. The mere fact that the engine rested at Salt Lake City after one movement in interstate commerce for re-fueling and inspection was not a non-interstate interlude in continuous interstate operation, but was a part of interstate operation sandwiched between two movements in inter-state operation. It was itself a part of and incidental to total and continuous interstate operation. I am somewhat surprised that the point had to be labored to the extent it has been. It appears to me quite obvious.