SMALL, P.J.T.C.
The issue in this case is whether plaintiff, Lady Frances V, LLC (“LIjC”) is subject to use tax (N.J.S.A. 54:32B-6) of $26,813 plus penalties and interest based on the 69 days (during June, July, August and September 2005) and 46 days (during June, July, and August 2006) that the LLC’s yacht, Lady Frances IV (the “Yacht”),[1] was docked in New Jersey.
Both parties have moved for summary judgment. I have concluded that the Director’s assessment of $26,813, plus interest and penalties must be affirmed.
The LLC is registered in Delaware. The books and records of the LLC that are not maintained by the Captain of the Lady Frances IV on the Yacht are maintained in New Jersey. The members of the LLC, George K. Miller, Jr., Esq. and his wife Debra Miller are residents of New Jersey. The Yacht was purchased in Florida on October 28, 2004 for $3,650,000.
*548 The Yacht was made available for charter-from November 2004 and appears to have had a successful charter season in the Caribbean from that time through the spring of 2005. The Yacht was outfitted for charter and the LLC hired a captain and crew to manage and sail it. Because of a New England charter cancellation, the Yacht sailed in the Spring of 2005 from Florida to Virginia for certain repairs and upgrades. Thereafter, the Yacht went to Seaview Harbor Marina in New Jersey to await summer charter business. While awaiting charters, the Yacht remained docked in New Jersey. Various members of the crew took vacations. On July 28, 2005, the Yacht left Seaview, purchased fuel in Atlantic City, cruised in New York and Connecticut with members of the LLC aboard for a few hours and continued on for an August 2005 charter. The Yacht returned to Seaview where it awaited a bottom painting which was undertaken in Maryland from where the Yacht returned for the Caribbean 2005-2006 charter season.
After the 2005-2006 Caribbean season, the Yacht returned to Seaview on June 20, 2006. Repairs were undertaken, the captain and steward went on vacation and on their return resigned. Thereafter, a new crew was hired and trained in New Jersey and on August 12, 2006, the Yacht sailed from New Jersey for some New England charters.
It is plaintiffs contention that during the time the Yacht spent in New Jersey in 2005 and 2006, it was in transit between the two seasonal charter locales of New England and the Caribbean, was undergoing repairs, and was orienting a new crew. At no time, they argue, was it used for recreational purposes or for the pleasure of the members of the LLC. No explanation is given as to why these between-charter dockings were in Seaview, New Jersey, rather than in Virginia or Maryland where other maintenance and repairs appear to have been undertaken during the transit of the Yacht between the Caribbean and New England.
The initial tax imposed on the plaintiff was based on the purchase price of the vessel under the theory that it was purchased out of state and brought into New Jersey for the use of the *549 LLC and its members. Subsequent investigation by the Division of Taxation resulted in a revised assessment based on the limited use of the Yacht in New Jersey for 69 days in 2005 and 46 days in 2006. The final tax assessment of $26,813 was approximately 12% of the original tax assessment of $219,000 (6% of the $3,650,000 purchase price).
I.
THE USE TAX
N.J.S.A. 54:32B-6 provides in pertinent part:
Unless property or services have already been or will be subject to the sales tax under this act, there is hereby imposed on and there shall be paid by every person a use tax for the use within this State of 6%, except as otherwise exempted under this act, (A) of any tangible personal property purchased at retail ..
{N.J.S.A. 54:3213-6 (2002) [2]]
N.J.S.A. 54:32B-2(h) defines “use” as:
[T|he exercise of any right or power over tangible personal property by the purchaser thereof and includes, but is not limited to, the receiving, storage or any keeping or retention for any length of time, withdrawal from storage . of such property.
[N.J.S.A. 54:32I3-2(h) (2002) (emphasis supplied); see also Estate of Swensen v. Director. Div. of Taxation, 12 N.J.Tax 558, 568 (Tax 1992).]
However, the Act exempts nonresidents from use tax where they use property solely in interstate or foreign commerce. N.J.S.A. 54:3233—11 (2). The statute provides that the compensating use tax shall not apply:
fi)n respect to the use of property purchased by the user while a non-resident of this State.... A person while engaged in any manner in carrying on in this Slate any employment, trade, business or profession, not entirely in interstate orfoieign commerce, shall not be deemed a non-resident, with respect to the use m this State of property in such employment, trade, business or profession
rN.J.S.A. 54:32B-ll(2)(emphasis supplied); see also Swensen, supra, 12 N.J.Tax at 568. J
The LLC is not a nonresident for purposes of the exemption because its activities in New Jersey go beyond the statutory definition of a nonresident. The LLC is registered in Delaware. To the extent that the books and records of the LLC are not kept *550 on the Yacht, they are kept in New Jersey which is the residence of the LLC’s two members. The LLC does not appear to have anything in Delaware except a registered agent.
Under the Act, the term “person” is defined to include limited liability companies. N.J.S.A. 54:32B-2(a). Under New Jersey law, “[t]ax-exemption statutes are strictly construed against those claiming exemption ... and the claimant bears the burden of proving an exemption.” New Jersey Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-178, 685 A.2d 1309 (1996) (citations and quotations omitted), cert. denied, 520 U.S. 1241, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997). Plaintiff “must demonstrate that it was a nonresident and engaged in business ‘entirely in interstate commerce’ to enjoy the tax-exempt status [under N.J.S.A. 5b:32B-ll(2) ] it currently seeks.” Swensen, supra, 12 N.J.Tax at 569 (emphasis supplied).
The Director is not asserting that plaintiff is a sham or that the plaintiff LLC is a resident of New Jersey. For that reason plaintiffs reliance on Coppa v. Director, Div. of Taxation, 8 N.J.Tax 236 (Tax 1986) is misplaced since the issue in this case is not whether plaintiff is a bona fide corporation. For purposes of the use tax, the Director argues that plaintiff, the LLC, is “not ... deemed a non resident” because it used the Yacht in New Jersey “not entirely in interstate____commerce” when it (1) stored the Yacht, (2) performed maintenance on it, and (3) hired and trained a new crew while the Yacht was in New Jersey.
The Director asserts that the assessment should be upheld because plaintiff exercised rights and power over the Yacht which was not used in interstate commerce during the two periods of time that the Yacht was in New Jersey. Although the LLC exercised rights and power over the Yacht while it was in New Jersey it also maintains that it was available for interstate charter during those periods of time. The Director may assess use tax, unless plaintiff establishes that the Yacht was entirely used in interstate commerce and was not personally used by plaintiff (the LLC) or the members of the LLC.
In Swensen, supra, Judge Lasser found the plaintiff corporation responsible for the payment of use tax when it failed to prove its *551 vessel was operated entirely in interstate commerce due to the vessel’s extended stays in New Jersey during the summer months of 1989 and 1990 for the personal use of the corporate stockholders and their guests and business associates. 12 N.J.Tax at 569-70. In concluding that the plaintiff corporation was liable for use tax, this court noted the following facts: (1) although the corporation was incorporated in North Carolina, the management of the corporation and control of the vessel was directed entirely from New Jersey; (2) the vessel, the sole asset of the corporation, was docked in New Jersey for a minimum of 38 days in 1989 and 48 days in 1990; and (3) during the period the vessel was docked in New Jersey, the vessel was operated for the pleasure and business of the corporation’s stockholders, their guests and business associates at the direction and control of the corporation’s stockholders.
Comparing the facts in this case to those in Swensen: (1) control of the vessel (the Yacht) was in New Jersey (although in this case control was delegated to the Captain wherever he might be with the Yacht, but when he was on vacation and after he resigned, he could not have been in control and the Yacht was in New Jersey); (2) the Yacht, the sole asset of the LLC, was docked in New Jersey for periods both longer and shorter (but in the aggregate longer) than the two periods in Swensen; and (3) during the period the Yacht was in New Jersey although the Millers have not been shown to have personally spent as much time on the boat as the Swensens, the Yacht was stored in New Jersey for safekeeping between charters, had repairs made to it and was provided with a new crew which was trained on the Yacht until it was allowed to depart from New Jersey waters.
I conclude that the repairing of the vessel, its storage, and the hiring and training of a new crew constituted something other than interstate commerce.
II.
PLAINTIFF’S ACTIVITIES IN NEW JERSEY WERE NOT ENTIRELY IN INTERSTATE COMMERCE.
In Waltrich Plastic Corporation v. Director, Division of Taxation, 5 N.J.Tax 320 (Tax 1983), this court was faced with the issue *552 of whether equipment had acquired a tax situs in New Jersey for sales and use tax purposes when the taxpayer purchased the equipment out-of-state, the equipment was delivered to the taxpayer’s place of business in New Jersey, the equipment was checked in New Jersey by the taxpayer, and then within 2U hours the equipment was shipped and delivered by the taxpayer to its manufacturing plants in Georgia and Massachusetts. In Waltrich Plastic Corporation, the taxpayer argued that the imposition of sales and use tax on the subject transaction was improper because the equipment was moving in interstate commerce and did not acquire a tax situs in New Jersey. Judge Lasser discussed in detail what was meant by an interruption in transit that would give rise to taxable situs:
The importance of the distinction between an interruption in transit for a business reason (“at the pleasure of the owner for disposal or use”) and an interruption related solely to transit was stressed in Independent Warehouses, Inc. v. Scheele, 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346 (1947). In that case a license tax on storage of coal imposed by Saddle River Township, New Jersey, was upheld where the coal was stored in New Jersey on its way from the Pennsylvania coal fields to New York City. The coal was stockpiled in Saddle River until needed in New York. The court held that the coal had come to rest in New Jersey and was subject to the control and direction of the owner because “the cessation takes place not simply for the carrier’s transit reasons relating to the necessities or convenience of the journey, but for reasons primarily concerned rath the owner’s business interest.” The reshipment to New York City was a new journey even though the railroad charged “through rates” on shipment from the coal fields to New York City. These and other cases which construe the term “come to rest” as an interruption “at the pleasure of the owner for disposal or use” contemplate a power on the part of the owner to exercise control over the interruption. Interruptions due to circumstances beyond the control of the owner have been held insufficient to warrant state taxation. Carson Petroleum Co. v. Vial, 279 U.S. 95, 49 S.Ct. 292, 73 L.Ed. 626 (1929); Edgewater v. Taxation and Finance Dep't, 135 N.J.L. 42, 50 A.2d 103 (S[up].Ct.1946).
An interruption in an interstate journey, however brief, will give rise to taxable situs if the goods have come to rest in this State. In IT & T Corp. v. State Tax Commission, 70 A.D.2d 700, 416 N.Y.S.2d 387 (App.Div.1979), the court, in holding that aircraft brought into the state for outfitting are subject to New York use tax, followed the United States Supreme Court decision in McGoldrick v. Berwind[-]White Coal. Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940). The court stated (at 389[, 60 S.Ct. 388]), that the Supreme Court has “held that the New York Sales and Use Tax is not an unconstitutional burden on interstate commerce when, as here, taxable ‘moments’ or ‘events’ occur when the personalty is at rest in this state and not engaged in interstate commerce____”
lid. at 324-25.]
*553 In applying the above principles to Waltrich Plastic Corporation, Judge Lasser concluded that the “[tjaxpayer retained possession and control of the equipment at all times for its own business purposes. The equipment was brought to taxpayer’s plant and detained there for taxpayer’s benefit and convenience and not for reasons solely related to transit.” Id. at 326. “The goods were not delivered directly from the place of purchase to their final out-of-state destination because taxpayer wished to minimize packaging, crating and transportation costs.” Ibid. Because an interruption in transit of the equipment was at the pleasure of the owner for disposal or use, the subject equipment came to rest in New Jersey and acquired a taxable situs in New Jersey for purposes of New Jersey’s Sales and Use Tax.
Additionally, this court in KSS Transportation Corporation v. Baldwin, 9 N.J.Tax 273 (Tax 1987), aff'd, 11 N.J.Tax 89 (App. Div.), certif. denied, 118 N.J. 184, 570 A.2d 952 (1989), had an opportunity to explain the taxable moment doctrine in the context of N.J.S.A. 54:32B-8.35 which exempts certain air carriers from Sales and Use Tax One of the statutory requirements set forth in N.J.S.A. 54:32B-8.35 is that an air carrier must be “engag[edj in interstate, foreign, or intrastate air commerce” for exemption from the tax imposed under the Act. The taxpayer argued that its aircraft was not subject to New Jersey use tax because the aircraft was used exclusively as an instrumentality of interstate commerce and there was no local taxable moment when the aircraft was removed from interstate commerce. In response to the taxpayer’s challenge, the court summarized the taxable moment [3] doctrine as follows:
The "taxable moment” test ... gives the purchaser control over whether it is subject to tax liability. If the aircraft is brought directly to its home base state, the purchaser is subject to a use tax. If the aircraft is used to transport *554 passengers or property in interstate commerce in the few days preceding its passage to its home base state, the purchaser is not subject to use tax in its home base state and may never be subject to a sales or use tax. This test assumes that the aircraft, while an instrumentality of interstate commerce, is not taxable unless a “taxable moment” in which the aircraft is not in intei'state commei'ce can be identified. Hangarage and routine maintenance during interstate flights have been held to be a continuation of interstate commerce. For a “taxable moment” to occur, either the airci'aft must come to x’est in the taxing state prior to being inti'oduced into intei'state commei'ce, or its stay in the state when it is not engaged in intei'state commerce must be protracted. See Independent Warehouses, Inc. v. Scheele, 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346 (1947); Union Pacific Co. v. Utah State Tax Comm., 110 Utah 99,169 P.2d 804 (Sup.Ct.1946).
[Id. at 282 (emphasis supplied).]
In applying the doctrine, the court concluded that in KSS Transportation Corporation, supra, there was no taxable moment in New Jersey because the aircraft did not come to rest in New Jersey prior to being introduced into interstate commerce and there was “no evidence that the KSS aircraft, although based in New Jersey, was ever removed from the stream of interstate commerce.” Id. at 282. The aircraft was hangered (stored) in New Jersey between flights in interstate commerce and there was no evidence of any maintenance being performed on the aircraft while in New Jersey. The tax was imposed because the corporation was a New Jersey corporation, the home base of the aircraft was New Jersey, and no other state had imposed a sales or use tax on KSS’s purchase of the airplane. KSS Transportation Corporation suggests that if a taxpayer only stores the tangible personal property and only performs routine maintenance there is no break in the continuation of interstate commerce. However, I conclude that this principle should be confined to the specific facts in KSS Transportation Corporation, supra, since that case dealt with a different statute which requires that a taxpayer be a resident of New Jersey in order to claim its exemption.
I conclude that the Yacht came to rest in New Jersey twice and at such times “taxable moment[s]” occurred which constituted interruptions in transit for business reasons. During each period of rest in New Jersey, plaintiff retained possession and control of the Yacht at all times for its own business purposes. Plaintiff contends that such stays in New Jersey were necessary because the crew took vacations. I conclude that it was to plaintiffs *555 advantage that the Yacht was stored close to its members’ domicile, New Jersey, while the Yacht was not being used in the interstate charter business. Someone had to be in charge while the captain was on vacation and during the period of time when there was no captain and the Yacht could not sail and until the new captain was trained. Mooring in New Jersey was for the benefit of the plaintiff LLC. The recruiting and mandatory training of a new crew in New Jersey prior to its departure constituted an interruption of the Yacht’s exclusively interstate activities. The maintenance performed on the Yacht in New Jersey was more than routine. For these three activities, storage; recruiting, hiring and training a crew; and non-routine maintenance, I conclude that the use of the Yacht in New Jersey was not entirely in interstate commerce.
An examination of the statutory language under which plaintiff claims an exemption from the Director’s imposition of use tax provides further support for the conclusion that plaintiff’s use of the Yacht is not exempt from use tax. The exemption provided by N.J.S.A. 54:32B-11 uses the word “entirely,” which is defined as: 1. Completely; wholly. 2. Solely or exclusively. Webster’s II New College Dictionary (2001). The use of the word “entirely” in front of “interstate commerce” indicates that there can be no other activity that would interrupt the interstate commerce. In this ease, there were multiple acts in connection with plaintiffs business that were not in interstate commerce. Plaintiff brought the Yacht into New Jersey for safekeeping while crew members took vacation. Plaintiffs acts included more than mere docking and routine maintenance of the Yacht. See KSS Transportation Corporation, supra, 9 N.J.Tax at 282. Plaintiff contends that the Yacht needed to be repaired and was not in a condition to be used. The repairs were beyond mere routine maintenance. The docking of the Yacht in New Jersey went beyond what happened in KSS Transportation Corporation, supra. If plaintiff had used the harbors of New Jersey merely as a stopping point in the Yacht’s charter journey, then I could not conclude that there was an interruption in interstate commerce. However, this is not what happened. As noted earlier, the harbors of New Jersey were not *556 merely used as a stopping point but they were used for safekeeping of the Yacht for a period longer than necessary if the Yacht was only in transit between south and north while the crew members went on vacation. Employment decisions were made in New Jersey where plaintiff hired and trained the new crew members. This is far more than taxpayer’s activities in both Waltrich Plastic Corporation, supra, and KSS Transportation Corporation, supra. Under these facts, plaintiffs acts were not entirely in interstate commerce. There was an interruption in transit which prevents plaintiff from claiming exemption from taxation pursuant to N.J.S.A. 54:32B-11.
Other states have come to similar conclusions. In determining whether an interruption in interstate commerce occurred giving-rise to the state’s ability to tax personal tangible property within that state, the Supreme Court of Arkansas recognized that the United States Supreme Court decision in Complete Auto Transit, Inc., supra, did “not address [the] question of whether an item’s transit through interstate commerce is continuous or sufficiently interrupted so as to come to rest.” Martin v. Riverside Furniture Corp., 292 Ark. 399, 730 S.W.2d 483, 485-86 (1987). Moreover, the Arkansas court stated that “[Complete A-uto Transit ] involves the question of whether a foreign entity has a sufficient connection with the state to allow the state to impose a tax on the entity’s activities.” Ibid. This recognition is consistent with the determination of this court in Waltrich Plastic Corporation, supra.

III.

IMPOSITION OF THE TAX DOES NOT VIOLATE THE COMMERCE CLAUSE
In KSS Transportation Corporation., supra, 9 N.J.Tax at 282-83, this court had an opportunity to examine the impact of Complete Auto Transit, supra, the leading ease on Commerce Clause restriction on state taxation. Judge Lasser wrote:
[T]he case of Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), reh'g den. 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977), *557 although decided in a gross income privilege lax setting, provides that interstate commerce must pay its fair share of the local tax burden, and sets forth the parameters for state taxation of interstate commerce instrumentalities. Complete Auto Transit permits slate taxation of an instrumentality in interstate commerce if: (1) sufficient nexus is found between the taxing state and the interstate business, (2) the tax is fairly related to the benefits provided by the taxing state to the taxpayer, (3) the tax does not discriminate against interstate commerce, and (4) the tax is fairly apportioned to local activities. This test was designed to achieve the dual goals of protection of interstate commerce and attainment of tax fairness based on the benefits received from the taxing state. A principal concern was avoidance of the imposition of a multiplicity of taxes on the same instrumentality by the several states. See also American Trucking Associations, Inc. v. Schemer, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). [Id. at 282-83.]
Although Lady Frances V, LLC was not formed in New Jersey, sufficient nexus existed to justify taxation by New Jersey since the Yacht was docked in New Jersey for periods of 69 and 46 days. The tax does not discriminate against interstate commerce because it is imposed uniformly on residents and nonresidents and property in intrastate and interstate commerce. Further, the tax is fairly related to the benefits provided by New Jersey to the taxpayer. The remaining factor to be analyzed under Cmi-plete Aido Transit, supra, is whether the subject tax is “fairly apportioned to local activities.”
In Swensen, supra, this court upheld the Director’s use tax deficiency against the corporate plaintiff. The court concluded that the exemption statute was not applicable because the corporate plaintiffs activities included personal uses which were not entirely in interstate commerce. See Swensen, supra, 12 N.J.Tax at 570. The court upheld the assessment in the amount of $71,295, which was an amount equal to 6% of the entire purchase price of the vessel involved in that case, plus penalty and interest. Thus, the imposition of the use tax on the entire purchase price of personal tangible property is justifiable and does not violate the holding in Complete Auto Transit, supra, requiring that the tax be “fairly apportioned to local activities.” Additionally Judge Lasser in WaltHch Plastic Corporation supra, suggested that imposition of the use tax on the purchase price of the out-of-state purchases of the equipment was proper. In neither case, was the use tax apportioned. In this case, after initially imposing the tax on the *558 entire purchase price, the Director decided to apportion the tax based on the plaintiff LLC’s use measured by days in New Jersey. There is no ease in New Jersey which discusses an apportionment of a use tax liability.
Apportionment of a use tax is not required under Complete Auto Transit. So long as there is the possibility of a credit for taxes paid to other states or apportionment, the tax will pass constitutional muster. In the case before me, the statute provides for a credit and the Director voluntarily apportioned the tax. The Supreme Court of Vermont has found, as has this court, that an apportionment of a use tax is not required. That Court held that apportioning the use tax based on the taxpayer’s use of an airplane in Vermont was not required although only seventeen percent of the taxpayer’s flight time was attributable to Vermont. Whitcomb Constr. Coirp. v. Commissioner of Taxes, 144 Vt. 466, 479 A 2d 164 (1984). The Court examined the fourth prong of the Complete Auto Transit test—the necessity of apportionment—and stated:
The fourth prong of the Complete Auto test—the necessity of apportionment—is intended to prevent multiple taxation of interstate commerce. See Japan Line, Ltd. v. County of Los Angeles, supra, 441 U.S. [434] at 446-47[, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979) ]. Two methods of taxation have been developed to ameliorate the risk of cumulative tax burdens upon interstate transactions. First, as in Henneford v. Silas Mason Co., 300 U.S. 577, 583-84, 587 [57 S.Ct. 524, 81 L.Ed. 814] (1937), multiple taxation may be avoided by a tax credit which provides an offset or exemption if a sales or use tax has been paid to another state or jurisdiction. Second, the tax burden may be apportioned. This method, first introduced in Pullman’s Palace Car Co. v. Pennsylvania, 141 U.S. 18, 26, 29 [11 S.Ct. 876, 35 L.Ed. 613] (1891), imposes a tax “in conformity with a formula that rationally relates the amount of the tax to the fraction of interstate activity taking place within the taxing state.” L. Tribe, American Constitutional Law § 6-19, at 367 (1978). “[The] fact of apportionment in interstate commerce means that ‘multiple burdens logically cannot occur.’ ” Japan Line, Ltd. v. County of Los Angeles, supra, 441 U.S. at 447[, 99 S.Ct 1813].
The power of a state to impose a use tax is well settled, Henneford v. Silas Mason Co., supra, and such a tax cannot impose multiple tax burdens when an offset has been provided for the use or sales tax paid to another jurisdiction. International Harvester Co. v. Department of Treasury, supra, 322 U.S. [349] at 359-60[ 64 S.Ct. 1030, 88 L.Ed. 1304 (1944) ] (Rutledge, J., concurring). *559 The burden is on the taxpayer to demonstrate a risk of multiple taxation. Standard Pressed Steel Co. v. Department of Revenue, 419 U.S. 560, 563 [95 S.Ct. 706, 42 L.Ed.2d 719] (1975); General Motors Corp. v. Washington, supra, 377 U.S. [436] at 449[, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964) ]; Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 462-63 [79 S.Ct. 357, 3 L.Ed.2d 421] (1959); Mobil Oil Corp., supra, 136 Vt. at 548-49, 394 A.2d at 1149.
[Id. at 471-72, 479 A2d 164.]
 A use tax is only required to be apportioned when there is risk of multiple taxation. See also PPG Indus., Inc. v. Tracy, Tax Comm’r, 74 Ohio St.3d 449, 659 N.E.2d 1250 (1996). In this case, plaintiff did not pay any sales or use taxes to New Jersey or to any other state prior to the assessment which is challenged. New Jersey has provisions for a use tax credit. N.J.S.A. 54:32B-6 and 11. For those reasons, I conclude that apportionment of the use tax was not required by the Director although she chose to do so. I find no authority in New Jersey or any other states requiring the state to apportion the use tax in the absence of risk of multiple taxation. Thus, although New Jersey had the constitutional right to impose a tax on the entire purchase price—there being no proof that plaintiff paid or was required to pay sales or use tax on the purchase price to any other state—New Jersey’s voluntary apportionment under the statute complies with any constitutional limitations.[4] See Hellerstein and Hellerstein, State Taxation U 18.03[5][a] at 18-46 to 18-49.
IV.
Conclusion
I find that the Yacht, the Lady Frances IV, was in New Jersey for the business purposes of plaintiff Lady Frances V, LLC. The Yacht was kept here for safekeeping (because it could not sail when its crew was on vacation), routine and non-routine mainte *560 nance and outfitting, and a new crew was hired and trained on the Yacht while it was in New Jersey. The Commerce Clause permits an unapportioned use tax to be imposed on personal property with sufficient nexus with New Jersey so long as there is no risk of multiple taxation. The Lady Frances TVs use in New Jei’sey by the LLC provided sufficient nexus with New Jersey to subject it to use tax in this State. The Lady Frances IV was not used entirely in interstate commerce and thus Lady Frances V, LLC was not a nonresident for New Jersey use tax purposes. The apportioned use tax imposed on plaintiff was constitutionally permissible and statutorily authorized under the facts found in this case.
Although plaintiff challenged the amount of the assessment in its complaint, in answer to the Director’s motion for summary judgment and in its cross-motion for summary judgment, it did not address that issue which is therefore deemed to be abandoned. El-Sioufi v. St. Peter’s Univ. Hosp., 882 N.J.Super. 145, 155 n. 2, 887 A.2d 1170 (App.Div.2005) (stating that claims raised were considered abandoned because neither the brief filed with the court nor the argument presented before the court referred to these claims). Having concluded that the statute supports the imposition of a tax on plaintiff in this case, and having determined that the statute and Constitution would support the imposition of an unapportioned tax, I conclude that plaintiff has abandoned its challenge to the method of apportionment used by the Director.
A judgment affirming the Director’s assessment accompanies this opinion.

 Although the LLC is Lady Frances V, LLC, the Yacht is Lady Frances IV. There appears to be no dispute as to a single LLC owning a single Yacht with names that differ by one roman numeral.

 The rate of tax was increased to 7% by L. 2006 c. 44 for periods after October 1, 2006.

 Although Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326, reh'g denied, 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977), may have made the use of "taxable moment” analysis obsolete (Hellerstem and Hellerstein, State Taxation II 18.03[3][a] at 18-29 n. 109 (3rd ed. 2000) citing and quoting KSS Transp. Corp. v. Director, Division of Taxation 11 N.J.Tax 89, 94 (App.Div.1989)), in this case both the modern (Complete Auto Transit) and old taxable moment analysis justifies the imposition of the use tax.

 Since the constitution would have permitted a use tax based on the entire purchase price, I do not address the specific authority for the Director's specific method of apportionment (days in New Jersey times fair rental value). Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984). The parties have not raised or discussed that issue in their respective moving and answering papers.