Central Transportation Company

*v.*

Z. D. Atkins, Commissioner, etc.

(*Nashville,* December Term, 1956.)

Opinion filed July 29, 1957.

Rehearing Denied October 4, 1957.

Petition for Certiorari Denied by U.S. Supreme Court January 6, 1958.

Eugene D. Jackson and Andrew D. Tanner, Nashville, for appellant.

George F. McCanless, Attorney General, Allison B. Humphreys, Solicitor General, Milton P. Rice, Assistant Attorney General, for appellees.

514

Mr. Justice Burnett delivered the opinion of the Court.

This is another sales tax case. The question here is whether a Tennessee corporation engaged solely in the business of leasing its trucks within the State to another Tennessee corporation, which uses these trucks in the course of its business of transporting agricultural produce within and without Tennessee, is subject to the sales tax with respect to the consideration received by it on account of such lease. The prime question thus presented is whether this tax on this lease, as applied to the appellant, infringes the commerce clause of the Federal Constitution. U.S.C.A. Constitution, Article 1, sec. 8, cl. 3.

Appellant, a Tennessee corporation, was formerly engaged in the transportation business, but for the past several years (at least since the Sales Tax was enacted in this State) its sole activity has been in the leasing of trucks belonging to it to the Central Produce Company, another Tennessee corporation, engaged in the buying and selling at wholesale of agricultural produce. Both the appellant and its lessee's principal place of business is located in Nashville, Tennessee. The appellant has a written lease with its lessee which was originally entered into in 1940 and is about the same except for certain amendments that have been made since that time. This

lease agreement provides in substance that the equipment is leased to the lessee for a stipulated amount of rental, which includes an agreed flat rental per month plus a stipulated amount per mile. The appellant, lessor, is required to furnish gasoline and oil and keep the trucks in a reasonable state of repair, and to replace worn out equipment upon demand. The lessee has agreed to keep strict account of every mile operated by the vehicles, use only experienced drivers, inspect the trucks before each trip, carry appellant's name upon each vehicle and pay the rental on the first of each month. The lessee is free to use the vehicles in any manner which it pleases and at any place and any time for any hauling which it may desire.

There are two classes of trucks covered by this lease, large trucks which are under this record used about 90% or better for hauling produce great distances and from without the State, while the smaller trucks are used for local delivery. There is nothing in the lease that precludes the use of any of these trucks for any purpose, or at any place, that the lessee may choose, nor is there anything said in the lease about the fact that the larger trucks are to be used largely in out of State traffic.

For all practical intents and purposes the expenses incurred upon the trucks traveling outside of Tennessee, except drivers' wages, were paid by the appellant, lessor. These expenses consisted, in addition to gas, oil and repairs, of ice to cool produce while in transit, food and lodging for the drivers, toll roads and bridges, weight scales, permits to operate and loading cost. The amounts paid for ice were reimbursed by the lessee.

■ The books of the appellant were checked in 1955 and the Commissioner on this check assessed the appellant with sales tax, penalty and interest based on the tax. The case was tried on a bill which sought to recover the tax and penalties which were paid under protest, the Commissioner's answer as amended and proof which consisted of depositions of the president of the appellant corporation and its chief bookkeeper. The Chancellor held that the appellant was liable for the tax and dismissed the bill. It is from this that the appellant has seasonably perfected its appeal and filed excellent briefs. The matter has been ably argued, and after reading the record, the briefs, the authorities there cited and others, we are now ready for a determination of the matter.

"A sales tax is a tax on the freedom of purchase— a freedom which wartime restrictions serve to emphasize". *McLeod v. J. E. Dilworth Co.*, 322 U.S. 327, 64 S.Ct. 1023, 1026, 88 L.Ed. 1304.

This tax of course is a privilege tax and is upon the privilege of "lease or rental" of tangible personal property in this State. Section 67-3003, T.C.A.; *Broadacre Dairies v. Evans*, 193 Tenn. 441, 246 S.W.2d 78; *Saverio v. Carson*, 186 Tenn. 166, 208 S.W.2d 1018. The Act defines the term "sale" for the purpose of this Act to include any transfer by "lease or rental" of tangible personal property and such terms as "lease or rental" mean the leasing or renting of tangible personal property. Sections 67-3002(b), T.C.A., and 67-3002(f), T.C.A.

■ The tax is collectible from persons engaged as "dealers", Section 67-3016, T.C.A., and a "dealer" includes one who leases or rents tangible personal property

with or without transferring the title to the other person. Section 67-3017, T.C.A. In other words the incidence of the sales tax in this State is upon the seller (*Hooten v. Carson*, 186 Tenn. 282, 209 S.W.2d 273) or as imposed in this case was on the lessor (appellant)'. This tax is not upon the buyer, or lessee even though the lease shifts the economic burden to the buyer with respect to the transaction.

■ ■ Of course the State is powerless to levy a tax upon interstate commerce and so far as this tax act is concerned in this particular instance we can find no effort of the State to be unfair in levying a tax which is a burden on interstate commerce. Just because the lessee under this lease might want to use the leased goods in interstate commerce is a matter entirely up to the lessee's choice and control. It must be remembered that this lease was executed in Tennessee between two Tennesse corporations. The tax is on the lessor and on the making of the lease and nothing is contemplated by the terms of this lease that the tax would be a burden on commerce between the States. The lessor, under the terms of this lease, reserved no power to determine when and where and how the lessor used these trucks and did business. All the appellant did was to furnish it the trucks to do business with.

As just said this tax in on the privilege of engaging in the business of leasing tangible personal property in this State. The measure of this tax is by law the gross proceeds derived from such leasing. If a portion of this rental accrued by reason of mileage traveled outside of Tennessee this is a situation about which the parties arranged in their lease. The State had nothing to do with

the establishment of the measure by which these parties determined the amount of the rental to be paid in their contract.

Under this tax as applied here the lessor, appellant, is taxed just like anyone else would be in Tennessee who makes a lease. The tax is no higher and made in no different manner with respect to this lease to the Central Produce Company than it would be in respect to a lease of its property to a lessee confining its operations wholly within the City of Nashville. In other words the tax is on the lease and the base of this tax is on the gross proceeds derived from the lease transaction and nothing else.

The very able argument is made by the appellant that:

"Had complainant's vehicles been *transferred by sale* to lessee instead of by lease, *the sale would have been a taxable event since the sale would have spent its force* as all other sales to consumers in Tennessee, prior to the use of said trucks in hauling exempt agricultural products."

In other words this argument is that if the appellant had sold outright its trucks to the Central Produce Company, its lessee, it admittedly would pay tax on this sale but since the tax is based upon the amount of money that this lessor is to get from this lease and that 90% plus of the use of these large trucks is in other States rather than in Tennessee that then that the making of the lease does not cover the entire transaction but the force of the lease is the use in these other States. As we said above, the incidence though of the Tennessee State Sales Tax is on the leasing of the property in Ten-

nessee. It is not on taking them into some other State or here or there but it is on that transaction of making the lease and as far as the taxable act is concerned it has been spent when the lease was made. In other words the able argument is made, "that a lease or rental of tangible personal property does not create a taxable transaction in Tennessee unless the leased property is used and consumed in Tennessee, * * *." As we see it and under the decisions of the Supreme Court of the United States this though is not the test. The test is where the lease was made upon which the tax is based. The tax is based upon the making of the lease in Tennessee. It is not upon what was going to be done under the lease because that is a thing that the parties could work out among themselves.

■ In determining the question here, naturally since it involves the Constitution of the United States, we must turn to the Federal cases.

The Supreme Court of the United States sustained the tax where the course of business and the agreement for sale plainly contemplated the shipment interstate in fulfillment of the contract. *Wiloil Corp. v. Com. of Pennsylvania*, 294 U.S. 169, 55 S.Ct. 358, 79 L.Ed. 838; *Graybar Electric Co. v. Curry*, 308 U.S. 513, 60 S.Ct. 139, 84 L.Ed. 437. The author of American Jurisprudence sums up the question here involved in very apt words thus:

"* * * there are a number of other decisions, among which are several by the Supreme Court of the United States, which hold that a general sales tax does not unconstitutionally burden interstate commerce as applied to sales (1) on orders solicited in the taxing juris-

diction (the contracts themselves sometimes being entered into there also), (2) by a seller maintaining a place of business in the taxing jurisdiction, (3) even though the orders, by reason of convenience or impracticability, are to be filled through subsequent interstate transportation of the merchandise from a source beyond the borders of the taxing jurisdiction, (4) provided that delivery is made to the purchaser in the taxing jurisdiction either (a) directly from such extra-state source, or (b) by relay through the offices of the seller in the taxing jurisdiction, and (5) provided further that no congressional enactment or policy is thereby offended." 47 Am. Jur., Sales & Use Taxes, Sec. 10, p. 210.

It is also said that the emphasis in the opinions of the Supreme Court of the United States which we read and are cited in the text are based on the fact that the delivery to the purchaser was made in the taxing district. Among other cases cited in support of this text is that of *McGoldrick v. Berwind-White Coal Mining Co.*, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876.

In that case the late Mr. Justice Stone, afterwards Chief Justice, made some very apt comments which are applicable here. Among other things he said:

"It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations." 60 S.Ct. 391.

"Non-discriminatory taxation of the instrumentalities of interstate commerce is not prohibited. The like

taxation of property, shipped interstate, before its movement begins, or after it ends, is not a forbidden regulation.'' 60 S.Ct. at page 392:

"Equality is its theme, (citing authority). It does not aim at or discriminate against interstate commerce.'' 60 S.Ct. at page 393.

The appellant puts much faith and reliance in the case of *Freeman v. Hewit,* 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265. In this case there is a gross income tax imposed upon the proceeds of the sale of securities sent out of the State to be sold. The case is interesting but we think this sentence at the conclusion of the majority of opinion shows the distinction between this case and the case now before us. The Court there said:

"Of course this is an interstate sale.'' 67 S.Ct. 280. Then of course the Court reaches the conclusion that it being interstate the law imposing the tax on the sale by Indiana was void. We think the case is clearly distinguishable from the case now before us. The tax here was on the making of the lease, not on what was done after the lease was made.

Great reliance was likewise put by the appellant on *Joseph v. Carter & Weekes Stevedoring Co.,* 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993. There the Supreme Court of the United States held that a local tax on gross receipts or upon the privilege of conducting business in stevedoring for interstate or foreign commerce measured by these gross receipts was invalid as unduly burdening or interfering with commerce. The gravamen of that opinion was that the movement of cargo off and on a ship is substantially a continuation of the movement or trans-

portation in interstate commerce and any tax, the tax as it was based on the unloading or loading of this was likewise an interference with interstate commerce. Obviously there was an entirely different situation there from the tax here as has been discussed at length herein. The Court in that opinion, 67 S.Ct. 819, made this pertinent remark:

"The selection of an intrastate incident as the taxable event actually carries a similar threat to the commerce but, where the taxable event is considered sufficiently disjoined from the commerce, it is thought to be a permissible state levy. This result generally is reached because the local incident selected is one that is essentially local and is not repeated in each taxing unit."

The Court cites many of its cases wherein the tax was held valid and says:

" * * * that in each there can be distinguished a definite separation between the taxable event and the commerce itself. We have no reason to doubt the soundness of their conclusions."

Clearly under the facts of the instant case it is distinguishable because the tax here is on the lease made, this is the taxable event and not on the use that these trucks were put to in interstate commerce even though this mileage was a thing that the lesser and lessee decided between themselves to make a basis for a portion of the price paid for this lease.

The Commissioner relies upon the case of *International Harvester Co. v. Department of Treasury of State of Indiana,* 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313, as

determinative of the issue here in its favor. In this case among other things the Supreme Court of the United States had before it the taxing statute of Indiana among which was what was known as:

"Class D: Sales by branches located in Indiana to dealers and users residing outside of Indiana, in which the customers came to Indiana and accepted delivery to themselves in this state."

On this class of sales the Supreme Court of the United States held that the tax was valid. The Court saying: (64 S.Ct. 1021)

"Moreover, both the agreement to sell and the delivery took place in Indiana. Those events would be adequate to sustain a sales tax by Indiana."

Then citing the *McGoldrick case, supra,* and quoting from it and then saying:

"Under the principle of that case, a buyer who accepted delivery in New York would not be exempt from the sales tax because he came from without the State and intended to return to his home with the goods. The present tax, to be sure, is on the seller. But in each a local transaction is made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce. In neither does the tax aim at or discriminate against interstate commerce. The operation of the tax and its effect on interstate commerce seem no more severe in the one case than in the other."

And again at page 1023 of 64 S.Ct., the Court said:

"The consummation of the transaction was an event within the borders of Indiana which gave it authority

to levy the tax on the gross receipts from the sales. And that event was distinct from the interstate movement of the goods and took place after the interstate journey ended.''

We must agree with this reason and conclusion as did the Chancellor and for these reasons hold that this was not a tax interfering with interstate commerce but was a tax between local concerns on a local transaction regardless of what they did afterwards.

Then it is argued herein that the fact that these trucks hauled agricultural products which in themselves were under the statute free from tax that they should not be taxed. What these trucks hauled is immaterial. The Commissioner does not undertake or did not undertake in this case to levy this tax with respect to the merchandise hauled by the lessee. As so frequently said herein this was a tax on the lease made by the lessor and the lessee.

Considerable proof was taken as to certain expenses which were paid by the lessee in the course of this transportation which had been assumed by this appellant. Under the lease agreement the appellant is obligated only to furnish gasoline and oil to its trucks and to keep them in a proper state of repair. The other expenses, such as tolls, food and lodging for drivers, etc., have apparently been assumed by the lessor or appellant outside the terms of this lease contract. Why this was done we do not know and cannot find in the record but, be that as it may, it does not seem to us that the overall arrangements by having done this are in any wise changed—after all this is a lease of trucks (tangible per-

sonal property) at an agreed rental price which as we understand it under the law constitutes the base of the sales tax. Under the statute it is plain that this tax is to be paid on the final rental or selling price, even though this price may include service charges. *Saverio v. Carson, supra.*

We think what has been said above really answers all pertinent or determinative questions herein except that of relieving the taxpayer of the penalty and interest. In some instances notably that of *Esso Standard Oil Co. v. Evans,* 194 Tenn. 377, 250 S.W.2d 569, 574, and cases there cited this was done. As we understand the authorities on the question this is a matter for the trier of facts, the Chancellor to exercise his discretion on. In the Esso case this Court said:

"From the foregoing authorities, we conclude that the matter of the remission of interest and penalty was within the sound discretion of the Chancellor, and on the facts of this case, we find no abuse of that discretion."

We have read this record and as heretofore said, listened to the able arguments and read the briefs and cannot really find from these wherein the Chancellor abused his discretion in failing to strike the interest and penalty when he determined this matter.

For the reasons here expressed we are constrained to affirm the opinion of the Chancellor.

### On Petition to Rehear

The complainant, Transportation Company, has filed herein a forceful re-argument of the propositions heretofore so ably argued, as a petition to rehear. There are

numerous cases cited herein which were not referred to in the original brief but none of these are in point or governing as to the proposition herein decided. We have very carefully read and re-read this petition along with the authorities therein cited and must frankly say that they have not changed our mind.

Among the cases cited in this petition is the case of *Bruce Motor Freight, Inc., v. Lauterbach,* 247 Iowa 956, 77 N.W.2d 613, which was decided by the Supreme Court of Iowa on June 19, 1956. This case is very strongly relied upon by the petitioner in support of the propositions here raised. We think though that the following sentence taken from this Iowa opinion shows clearly how this case differs from the case now before us and is therefore not in point. That Court says:

"The motor vehicles and trailers were all purchased, or leased by or to appellees for use in interstate transportation, and for no other purpose. There was no 'taxable moment' as to any of the personal property involved in these cases prior to its being placed in interstate transportation." 77 N.W.2d 620.

All of the cases cited in this petition to rehear are sound, as we see them, based on the facts there considered, but in our view none of them factually meets the situation in the instant case. Frankly we feel that our original opinion expresses the correct viewpoint and that it would certainly be mere repetition if we tried to again state what we have there stated. We have no argument with the propositions decided in any one of these cases based upon the taxable event as shown by the facts of each of those particular cases.

The questions raised originally in this lawsuit and now again re-argued relate to whether a lease of vehicles, which are subsequently employed in interstate commerce, is sufficiently disjointed from that interstate commerce to constitute an event wherein the State could levy a tax thereon. We particularly answered this question on pages 942, 943 of 305 S.W.2d, of our original opinion and herein attempted to show that the tax here, as we saw it, was based on the transfer of these trucks under this lease (that was the instance of tax) and not on the mere execution of the lease.

This tax as levied in this act is not a tax attempted to be levied upon the receipts from interstate commerce. So far as we know all authorities are to the effect that a State cannot levy a tax upon receipts derived from interstate commerce. As we pointed out in our original opinion the lessor (complainant in this action) in that lease had nothing whatever to do with the use of the property in interstate commerce. Under this lease the lessee of these trucks could have used them entirely within the State of Tennessee. If he had done so there would absolutely be no claim that the taxable event of leasing these trucks had anything to do with its theory of non-taxability.

The tax in question here is not upon gross receipts of any character, but upon the privilege of engaging in a certain type of business—that is, the leasing of tangible personal property. We cited authorities in our original opinion to support such taxation. The receipts from this business herein compromise merely the measure of the tax. Merely because some of these receipts come from interstate business is because the lessee so willed it and

not because the State has attempted to in anywise assess a tax on interstate receipts.

As we said in our original opinion this to us has been a very interesting case, it has been exceptionally well presented and well briefed. We are sorry that we cannot agree with counsel but it just happens that we cannot and we feel that what we have said in our original opinion answers the matter completely and that that is the logical, reasonable method and way in which the lawsuit should be decided. Being of this mind it results that the petition to rehear must be overruled.