358 P.2d 352

DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Plaintiff,

v.

STATE TAX COMMISSION of Utah, Defendant.

No. 9312.

Supreme Court of Utah.

Jan. 13, 1961.

Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for plaintiff.

Walter L. Budge, Atty. Gen., F. Burton Howard, Asst. Atty. Gen., for defendant.

WADE, Chief Justice.

Denver and Rio Grande Western Railroad Company petitions this court to review a State Tax Commission decision imposing sales tax liability on money paid to Denver and Rio Grande for repairing cars and locomotives of other railroads used by Denver and Rio Grande as exchange equipment in interstate commerce. Only the repair of such equipment chargeable to the railroad which owns it is involved in this petition. This is called "owner line responsibility" and includes repairs resulting from ordinary wear as distinguished from "handling line responsibility" resulting from the fault of the handling line which repairs such cars without compensation from the owner line. The facts are not disputed and most of them are stipulated.

Chapter 113, Laws of Utah for 1959, amends Section 59–15–4, U.C.A.1953 by adding subsection (e) so that it contains the following:[1]

"From and after the effective date of this act there is levied and there shall be collected and paid:

\*    \*    \*    \*    \*    \*

"(e) A tax equivalent to 2% of the amount paid or charged for all services for repairs or renovations of tangible personal property, or for installation of tangible personal property rendered in connection with other tangible personal property."

Rio Grande contends that the imposition of such tax is prohibited by Article I, Section 8 of the United States Constitution, giving Congress the power to "regulate commerce \* \* \* among the several States" claiming (a) it is a direct imposition on interstate commerce and (b) it interferes with acts of Congress occupying the field of regulating interstate commerce. Judgment affirmed. We will discuss the foregoing contentions jointly.

The above cited provisions of the United States Constitution vest in Congress the power to regulate interstate commerce and since Congress has occupied that

---

1. See 1959 Pocket Supplement to Volume 6 U.C.A.1953, Section 59–15–4.

field, a state may not unduly burden such operation with taxes.[2] Just what taxes constitute a forbidden tax burden often presents a complicated and hard-to-determine question. The sales tax and its alternative or counterpart, the use tax, have been questioned in this state a number of times. In at least two cases we have held the use tax uncollectible for violation of the interstate commerce provisions of the Constitution.[3]

In the Southern Pacific case[4] we held invalid a use tax levied on food furnished without charge by the railroad and consumed within this state by its employees who operated the dining car services on trains passing through this state. We refused to uphold this use tax levy because we found no taxable event of this food when it was not being used in furtherance of interstate commerce. There the state made no claim of a sale by the railroad of this food to the consuming employees. So we did not determine that question.

In the Union Pacific case[5] we again held invalid a use tax assessed on the purchase price of diesel engines which were first used in Nebraska then driven to Salt Lake City, and after inspection for fuel and repairs were used in interstate commerce here. We there rejected the state's contention that the inspection of the locomotive after its arrival here, and before using it in interstate commerce, constituted a withdrawal from interstate commerce, thereby creating a taxable event here before return to interstate commerce. There the state relied on a line of cases holding that a taxable event had occurred wherein the facts are not readily distinguishable from the situation there presented.[6] However, there is no difficulty in distinguishing the facts in that case from the facts in the present case. There this state levied a use tax on the full purchase price of the diesel locomotives which were first used in Nebraska then driven to Utah, claiming that an inspection for repair and fuel before actual use in interstate commerce here constituted a taxable event. Here a sales tax is levied not on the purchase price of the cars and locomotives repaired, but on the money paid to the Rio Grande for materials furnished and services rendered in making

2. See Cahill, State Taxation of Interstate Commerce, 27 Ore.L.Rev. 97, 98 (1948).
3. Southern Pacific Company v. Utah State Tax Commission, 106 Utah 451, 150 P.2d 110; Union Pacific Railroad Company v. Utah State Tax Commission, 110 Utah 99, 169 P.2d 804.
4. See note 3, supra.
5. See note 3, supra.

6. See Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 86 L.Ed. 586; Pacific T. & T. Co. v. Gallagher, 306 U.S. 182, 59 S.Ct. 396, 83 L.Ed. 595; Cloverdale v. Arkansas-Louisiana Pipe Line Co., 303 U.S. 604, 58 S.Ct. 736, 82 L.Ed. 1043; Nashville C. & S. L. Ry. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730.

such repairs while the cars and locomotives are temporarily out of interstate commerce service while the repairs are made within this state.

Rio Grande voluntarily paid and concedes liability for a use tax on the material used in making these repairs. So the dispute is limited to whether our statute creates a valid sales tax liability for the services rendered in making such repairs by Rio Grande and paid for by the owner line. Rio Grande only claims that this tax violates the commerce clause of the federal Constitution by creating an unreasonable burden on interstate commerce with no taxable event in this state. It does not claim that our statute is invalid because the tax is technically on services and not on a sale of property and such a contention would be without merit if made. Thus it is not apparent why the materials furnished in making the repairs could be taxable but the services rendered in making such repairs would not be taxable. The same taxable event occurs in this state in connection with the repair services rendered as with the materials furnished. The

cars and locomotives are temporarily taken out of service while the repairs are made, and in so doing the materials are used and all this is accomplished in this state through the Rio Grande and paid for by the owner lines, and the burden on interstate commerce is the same on each item.

In the Union Stock Yards case [7] we upheld a sales tax on hay, grain and straw fed by the Union Stock Yards to livestock after such livestock were taken off the train for feeding and rest purposes while in transit through this state in interstate commerce. We there held that there was a taxable event in this state on a transaction occurring in this state between the interstate movements of the livestock before and after the taking off the trains for feeding and rest. We conclude that the rule therein followed is equally applicable to the facts in the present case and affirm the Tax Commission's ruling.

No costs allowed.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

7. Union Stock Yards v. State Tax Commission, 93 Utah 174, 71 P.2d 542.