The VECTOR COMPANY, INC., Appellant,

v.

Thomas D. BENSON, Commissioner,
Appellee.

Supreme Court of Tennessee.

Feb. 5, 1973.

Charles D. Lockett, Knoxville, for appellant.

David M. Pack, Atty. Gen. of Tenn., Milton P. Rice, Deputy Atty. Gen. of Tenn., Everett H. Falk, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

HUMPHREYS, Justice.

Appellant, a Tennessee Corporation, acquired aircraft outside the State of Tennessee and brought it to its Knoxville domicile from which point it used it in conducting its real estate development business in Tennessee and other states and territories. No sales or use tax was paid any other state on the aircraft. Vector's suit to recover the use tax, paid under protest, was dismissed and it has appealed assigning errors.

Vector is a Tennessee Corporation qualified to do business as a foreign corpora-

tion in several other states. Additionally, it carries on business and maintains offices through subsidiaries in other states. Vector's business requires extensive travel on the part of its executives and personnel and to meet these travel requirements it bought three aircraft of different make and model in Georgia and North Carolina, in 1967 and 1968. The aircraft were brought to Knoxville, Tennessee, situs of Vector's home office, from which their operations were continually thereafter ordered and directed. The sole use of the aircraft by Vector is transportation in furtherance of its business carried on in Tennessee and various states. When not actually in operation the aircraft occupy tie-down space at a Knoxville airport or in airports where they come to rest following journeys. Vector is and always has been free to use the aircraft as it chooses. There are no interests in other parties which restrict their operation thereof to particular times, places or manners. Actual use by Vector has been general and unrestricted, including flights between points in Tennessee and out-of-state points, between points in other states and other territories, and between points in Tennessee. Most of the flights are, however, interstate. The aircraft are taxed as personalty in Knox County, and their value is utilized as a Tennessee value in computation of complainant's property measure for Tennessee franchise tax purposes.

No sales or use tax was paid on the aircraft at the time of their importation into Tennessee or at any subsequent time, until the completion of an audit of Vector's records by the Commissioner, whereupon a deficiency demand was made for use tax, together with appropriate penalties and interest, in the amount of $20,518.17. This amount was paid under protest and suit brought for its recovery. The facts were stipulated by the parties, and following a hearing the Chancellor entered a decree holding Vector liable for the disputed tax, and dismissed its bill.

The errors assigned are that the property was not subject to the use tax, because there was no taxable incident to subject it to taxation. That the property is engaged in interstate commerce and its use taxation is prohibited by the Constitution of the United States and Tennessee Code Annotated § 67–3007. And, that if the use tax is applicable the Court erred in not apportioning the tax to the use in Tennessee to total use. We agree with the Chancellor that these assignments of error are without merit.

The use tax is complementary to the sales tax and is applicable with respect to tangible personal property imported from outside the state and used by the importer within the state. Each such use is defined to be the equivalent of a sale at retail to which the appropriate tax shall immediately apply. § 67–3005 T.C.A. Section 67–3002 T.C.A. contains applicable statutory definitions. Subsection (m) defines the term "use tax" as including, "use," "consumption", "distribution", and "storage" of tangible personal property. Subsection (g) defines "storage" to be "any keeping or retention in this state of tangible personal property for use or consumption in this state, for any purpose other than sale at retail". Subsection (h) defines "use" to be: "the exercise of any right or power over tangible personal property incident to the ownership thereof, except . . . . sale at retail".

T.C.A. § 67–3007 undertakes to define the scope of the sales and use tax with respect to interstate commerce. This section reads as follows:

"It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on bona fide interstate commerce. It is, however, the intention of this chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after

it has come to rest in this state and has become a part of the mass of property in this state."

The sole purpose of this section is to confine the application of the sales and use tax to those subjects which a state is permitted to tax under the Commerce Clause of the Constitution of the United States. By this section the legislature did not intend to carve out a class of property and exempt it by its own definition thereof. There is nothing in the language to force such a conclusion. This was implicit in our opinion in Central Transportation Co. v. Atkins, 202 Tenn. 512, 519, 305 S.W.2d 940, 943, where Chief Justice Burnett wrote for the Court: "In determining the question here, naturally since it involves the Constitution of the United States, we must turn to the Federal cases." That the section under consideration does not furnish, in its own language, a definition of a class of property that is exempt from taxation, is concluded by our recent case of Texas Eastern Transmission Corp. v. Benson, Tenn., 480 S.W.2d 905, 907, where we said: "While this provision is a recognition by the legislature that there are constitutional limitations upon the power of a state to levy a tax on goods moving in interstate commerce, it presumably intended to extend the taxing power of the State of Tennessee to the fullest extent allowed under the Commerce Clause".

It is clear that under the statutory definitions, Vector imported tangible personal property into Tennessee from without the state for the purpose of retaining it or exercising dominion over it in Tennessee and so became liable for a use tax unless exempted operation of the Commerce Clause, under which property that comes into Tennessee solely for the purpose of export or property which otherwise remains within the stream of interstate commerce while here is exempt.

So, the question is, when is property at rest within a state so as to become subject to that state's taxing jurisdiction. In dealing with this question, Chief Justice Hughes of the United States Supreme Court wrote in Minnesota v. Blasius, 290 U.S. 1, 10, 54 S.Ct. 34, 37, 78 L.Ed. 131: "Where property has come to rest within a state, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the state, or for shipment elsewhere, as his interest dictate, it is deemed to be a part of the general mass of property within the state and is thus subject to its taxing power."

■■ It is the rule that personal property is deemed to have the domicile of its owner in the absence of a showing of permanent situs elsewhere. 51 Am.Jur. Taxation; Hawley v. Malden, 232 U.S. 1, 34 S. Ct. 201, 58 L.Ed. 477; Southern P. Co. v. Kentucky, 222 U.S. 63, 32 S.Ct. 13, 56 L. Ed. 96. It is stipulated that the aircraft in question have been subjected to ad valorem property taxation in Knox County, which is complainant's domicile. It is clear from the stipulation that the aircraft have been at all times subject to whatever use Vector may have seen fit to make of them, and for use wherever its interests may have dictated. These and other stipulated facts clearly demonstrate that the aircraft have come to rest in this state and have become a part of the mass of property in this state, and as such are subject to use taxation.

The idea that the craft were not taxable, because Vector intended to use the aircraft in interstate commerce after they had acquired a local situs, is untenable under Nashville, Chattanooga & St. L. RR. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L. Ed. 730. That case involved the Tennessee gasoline tax, one of the incidents of which is storage of fuel in Tennessee as applied to gasoline imported by the Railroad from outside the state and placed in storage tanks for subsequent use by the Railroad in its interstate operation. The Railroad resisted the tax as violative of the Commerce Clause. The tax was upheld, however, by the Supreme Court of the United States in an opinion by Justice Stone who wrote as follows: "The fact that the oil was, in the

ordinary course of appellant's business, later withdrawn from storage for use, some within and some without the state, part of it thus becoming again the subject of interstate transportation, did not affect the power of the state to tax it all before that transportation commenced. . . . It cannot be doubted that, when the gasoline came to rest in storage, the state was free to tax it, notwithstanding its prospective use as an instrument of interstate commerce, as it was to tax appellant's right of way, rolling stock, or other instruments of interstate commerce, which are subject to local property taxes."

That this pause between interstate transportation of goods and their interstate use need not be a substantial one time-wise is made clear by the case of Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586, and its companion case, Pacific Telephone & Telegraph Co. v. Gallagher, 306 U.S. 182, 59 S.Ct. 396, 83 L.Ed. 595. In those two cases the taxpayers deliberately, and "as nearly continuous as managerial efficiency can contrive", incorporated the property into instrumentalities of interstate commerce after its importation into the state. Although the goods were such that they were adaptable to no other final use than incorporation in an interstate operation, the United States Supreme Court said in the *Southern Pacific* case: "We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use . . . . . retention and exercise of a right of ownership, respectively . . . . was effective. The interstate movement was complete. The interstate consumption had not begun."

The point made by these two cases that the concept of "storage" is not confined to

the placing of goods in some location set aside for such purpose as for example, a warehouse, was a basis of our recent opinion in Texas Eastern Transmission Corp. v. Benson, supra.

Under these authorities and the facts of the case, it is clear that the Tennessee use tax was properly applied to the use of this property and that the Chancellor's decree dismissing the suit to recover the taxes, penalties and interest should be affirmed.

We have not been unmindful of the case of W. R. Grace & Co. v. Comptroller, decided by the Court of Appeals of Maryland in 1969, and reported in 258 A.2d 740. That case is not, of course, controlling, and we are not persuaded by it to hold contrary to the way we have. The Maryland Appeals Court felt that the aircraft W. R. Grace & Company, a Connecticut corporation, had bought outside the state of Maryland was not Maryland property, so that the Maryland use tax should not apply.

In the case at Bar, however, the aircraft are Tennessee property, so the tax does apply.

As to Vector's contention that the use tax should be apportioned on the basis of intrastate use to interstate use, a sufficient answer is that no provision is made for such apportionment by the Tennessee Sales and Use Tax law. And having determined that the use tax applies .this Court has no authority to apportion on any basis.

The decree of the Chancellor is affirmed.

DYER, C. J., CHATTIN and Mc-CANLESS, JJ., and WILSON, Special Judge, concur.