**WILLIAMS RENTALS, INC., Appellant,**

v.

**George M. TIDWELL, Commissioner, Department of Revenue of the State of Tennessee, Appellee.**

Supreme Court of Tennessee.

Oct. 7, 1974.

Cochran, Carey, Fleischer & Mullikin, Memphis, for appellant.

Milton P. Rice, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, for appellee.

OPINION

PER CURIAM.

Williams Rentals, Inc., filed a complaint in the Chancery Court of Davidson County seeking the return of sales taxes paid to the State of Tennessee under protest. On considering a motion for summary judgment, the chancellor dismissed the complaint. Williams Rentals, Inc., appealed, insisting the chancellor erred "in holding that the State of Tennessee is not interfering with interstate commerce by assessing a tax on transactions where appellant leased equipment to contractors in Memphis, Tennessee, with the clear understanding that said equipment was immediately to

be transported to the States of Arkansas and Mississippi to be used at job sites in those two states."

Chancellor Frank Drowota, III, now Judge of the Court of Appeals, filed a comprehensive memorandum opinion in which he discussed fully and decided correctly the question before us on appeal. We adopt the opinion of the chancellor set out below as the opinion of this Court.

"Williams, a Tennessee corporation, operates a rental business in Shelby County, Tennessee, through which it rents construction machines and equipment to contractors in Tennessee and the surrounding states. This action was instituted to recover the sales tax paid under protest by Williams. The tax in question was assessed on transactions in which Williams leased construction equipment to contractors for use solely outside the State of Tennessee. However, delivery of the equipment was within the State of Tennessee.

■ "Williams argues that taxing such transactions results in double taxation and is a burden upon the interstate commerce between the parties, and places Williams at a competitive disadvantage with out-of-state rental companies who do not have to pay but one tax. Thus, Williams contends, the tax is in violation of Article I, Section 8, and Article I, Section 10 of the United States Constitution and contrary to the statutory exemption granted interstate commerce under Section 67–3007, Tennessee Code Annotated.

"Section 67–3007 provides as follows:

" 'Interstate commerce exempt.—It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on bona fide inter-

state commerce. It is, however, the intention of this chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state.'

The Tennessee Supreme Court, discussing Section 67–3007 in Texas Eastern Transmission Corp. v. Benson, Tenn., 480 S.W. 2d 905 (1972), stated:

" 'While this provision is a recognition by the legislature that our constitutional limitations upon the power of a state to levy a tax on goods moving in interstate commerce, it is presumably intended to extend the taxing power of the State of Tennessee to the fullest extent allowed under the commerce clause.' 480 S.W.2d at 907.

Thus, this State's highest court has declared that where a tax does not constitute a violation of the commerce clause, no exemption is available under Section 67–3007.

■ "The question to be resolved is whether the tax in question is a violation of the commerce clause. For reasons hereinafter stated this Court is of the opinion that the imposition of the tax does not violate the commerce clause.

■■ "Unquestionably, the sale or lease of goods within a state may form part of a transaction in interstate commerce and hence be entitled to enjoy a corresponding immunity. Eastern Air Transport v. South Carolina Tax Comm., 285 U.S. 145 [147] [52 S.Ct. 340, 76 L.Ed. 673] (1932). But, it is only when such a tax operates to regulate commerce between the states or discriminate against interstate commerce in favor of intrastate commerce to an extent which infringes the authority conferred upon Congress, that the tax can be said to

exceed constitutional limitations. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33 [60 S.Ct. 388, 84 L.Ed. 565] (1940).

■ "The decisions dealing with the commerce clause limitations on states' taxing powers appear to be predicated on a practical judgment as to the likelihood of the tax being used to place interstate commerce at a competitive disadvantage. But this is not to say that the commerce clause is intended to relieve those engaged in interstate commerce of their just share to the state tax burden. When individuals avail themselves of the laws and privileges of a state, the state may exact a tax from those individuals. And, merely because the incidental or consequential effect of the tax is an increase in the cost of doing business, this in and of itself does not constitute a burden on interstate commerce. *Id.* As stated by the Supreme Court in *McGoldrick:*

" 'In sustaining these taxes on sales, emphasis was placed on the circumstances that they were not so laid, measured or conditioned as to afford a means of obstruction to the commerce or of discrimination against it, and that the extension of the immunity of the commerce clause contended for would be at the expense of state taxing power by withholding from taxation property and transactions within the state without the gain of any needed protection to interstate commerce.' 309 U.S. at 51. [60 S. Ct. 388]

"The tax in *McGoldrick* was conditioned upon events occurring within the taxing state, to-wit, the 'transfer of title or possession of the purchased property.' Under the holding of that case, a buyer who accepted delivery in the taxing state would not be exempt from the sales tax because he came from another state and intended to return to his home state with the goods.

"Williams argues that the transaction sought to be taxed is not taxable in that the property leased is not used in Tennessee. The transaction, Williams contends, is initiated in Tennessee but because the contemplated use of the property is to be in another state it should be characterized essentially as an interstate transaction exempt from taxation. However, the Tennessee Supreme Court addressed this argument in Central Transport Co. v. Atkins, 202 Tenn. 512 [305 S.W.2d 940] (1956). In that case, Mr. Justice Burnett, speaking for the court, stated:

" ' . . . the able argument is made, "that a lease or rental of tangible personal property does not create a taxable transaction in Tennessee unless the leased property is used and consumed in Tennessee, * * * ." As we see it and under the decisions of the Supreme Court of the United States this though is not the test. The test is where the lease was made upon which the tax is based. The tax is based upon the making of the lease in Tennessee. It is not upon what was going to be done under the lease because that is a thing that the parties could work out among themselves.' 202 Tenn. at 519. [305 S.W.2d 940]

"In International Harvester Co. v. Indiana Department of Treasury, 322 U.S. 340 [64 S.Ct. 1019, 88 L.Ed. 1313] (1944), the United States Supreme Court dealt with a similar fact situation. International Harvester was *inter alia*, challenging Indiana's authority to exact a tax in respect to the proceeds of sales of goods by an Indiana seller to an out-of-state buyer who came into Indiana, took delivery there and transported the goods to another state. In its decision, the Court, comparing *McGoldrick* and the case then before the Court, stated:

" 'But in each a local transaction is made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce. In neither does the tax aim at or discriminate against interstate commerce. The operation of the tax and its effect

on interstate commerce seem no more severe in the one case than in the other. Indeed, if we are to remain concerned with the practical operation of these state taxes rather than with their descriptive labels, we must acknowledge that the sales tax sustained in the Berwind-White Case 'was, in form, imposed upon the gross receipts from an interstate sale.' But that case did no more than to hold that those in interstate trade could not complain if interstate commerce carried its share of the burdens of local government which helped sustain it. And there was no showing that more than that was being exacted.' 332 U.S. at 346. [64 S.Ct. 1019] (Citations omitted). [322]

"The Court went on to say:

" 'We only held that where a State seeks to tax gross receipts from interstate transactions consummated within its borders its power to do so cannot be withheld on constitutional grounds where it treats wholly local transactions the same way. Such 'local activities or privileges' are as adequate to support this tax as they would be to support a *sales tax*. To deny Indiana this power would be to make local industry suffer a competitive disadvantage.' *Id.* At 349. (Citations omitted, emphasis added.) [64 S.Ct. 1019]

"In the instant case, Tennessee taxes interstate transactions to the same extent as the transactions in question. The tax exacted from these transactions neither tends to regulate nor discriminate against interstate commerce and thus is not an excessive exercise of the State taxing power.

"This Court, as stated, is therefore of the opinion that defendant's actions did not go beyond the constitutional limitations of the commerce clause and such actions are hereby upheld."

Affirmed. Costs incident to the appeal are adjudged against Williams Rental, Inc., and its surety.