SERODINO, INC., Appellant-Plaintiff,

v.

Jayne Ann WOODS, Commissioner of Revenue, State of Tennessee, Appellee-Defendant.

Supreme Court of Tennessee.

July 17, 1978.

Roger W. Dickson, Carl E. Hartley, Stophel, Caldwell & Heggie, Chattanooga, for appellant-plaintiff.

Jimmy G. Creecy, Asst. Atty. Gen., Nashville, for appellee-defendant; Brooks McLemore, Jr., Atty. Gen., of counsel.

OPINION

HARBISON, Justice.

In this case appellant seeks recovery of Tennessee sales and use taxes paid under protest. The Chancellor dismissed the suit, holding that the transactions out of which it arose were taxable. We affirm that decision.

The taxpayer is a Tennessee corporation engaged in business activities in and near the navigable waterways of this and other states. Its principal offices are in Chattanooga, but it maintains extensive facilities for dry-docking, repair and launching of river barges and other vessels at a shipyard on the Tennessee River at Hale's Bar, near Guild, Tennessee. The present case involves the taxability of materials and services furnished by the taxpayer to others in the repair and renewal of barges at this facility.

Although it owns and operates its own barges and towboats, appellant does extensive work for other companies operating river barges into and out of the Chattanooga port area. It makes a distinction between the repair of damaged barges, which consists principally of patching torn or leaking areas, and the renewal of barges, which may involve the removal and replacement of substantial portions of the steel framework and other structural components. If a barge is damaged above the water line, repair or renewal may occur while the barge is in the water; if damage extends below the water line, it is usually necessary to place the vessel in dry dock, perform the requisite work, and re-launch the barge. The taxpayer bills its customers separately for dry-dock and launching services. It protests the taxing of these services by the Commissioner as well as the taxation of its repair services and parts.

The audit report for the tax years in question reveals that taxpayer performed services for some thirty-five to forty different companies. The president of appellant, Mr. Serodino, testified that to the best of his knowledge all of the barges upon which work was performed were used in inter-

state river transportation. Officials of two of the larger customers of taxpayer testified at the trial, but, other than the general statement by Mr. Serodino, there is no evidence as to the operating authority or nature of the business of any of the other customers whose barges were serviced at the Hale's Bar facility. Although the facts are not clearly established, we will assume that all of them were interstate carriers and that their barges were engaged in interstate transit immediately before being consigned to the taxpayer's shipyard.[1]

There is no question in this case of multiple taxation, and no insistence that any state other than Tennessee has attempted to tax the transactions involved. No discrimination in theory or in practice between interstate and intrastate transactions has been shown, nor is there any testimony indicating that the Tennessee use and sales taxes at issue should or could reasonably be apportioned to any other state or taxing authority.

The taxpayer asserts that the sales and use taxes are improperly levied upon its repair and renewal services on a number of different theories.

In its first assignment of error the taxpayer contends that its sales and services are exempt under an administrative rule issued by the Department of Revenue, as follows:

> "A common carrier shall pay the Sales or Use Tax on all tangible personal property or taxable services which it buys or uses in this State, except rolling stock, aircraft, or floating equipment which enters the State in actual use in interstate commerce at the time of entering, and is continuously used in interstate commerce thereafter. This exception shall not apply to such equipment which is localized for use within the State."

To sustain its position, the taxpayer insists that the barges themselves, which are floating equipment, are also "common carriers," and as such are entitled to exemption under the rule. That is, they are the actual "carriers" of interstate cargoes.

■ The barges, of course, are not "common carriers" although they may be owned and operated by companies which are so engaged. The barges themselves do not buy or use equipment; their owners or operators do so. Further, we have serious doubt that the barges, at least for sales tax purposes, are "continuously used in interstate commerce" while they are withdrawn from use and are undergoing renewal or repair in the shipyard or dry dock. The record shows that a barge may remain at Hale's Bar for periods of time ranging from a portion of one day to several weeks, depending upon the nature and extent of the work to be done and the availability of parts.

■ We do not understand that taxpayer contends that it is a "common carrier", insofar as its shipyard repair services for other companies are concerned. Taxpayer's interpretation of this administrative rule is, in our opinion unnatural and certainly contrary to the interpretation which has been given to it by the Department, exempting only the purchase of rolling stock, aircraft, or floating equipment by common carriers under very limited circumstances. The rule is not a model of clarity, but we do not believe that it can fairly or reasonably be said to exempt repair or renewal services such as are involved here.

One of the principal contentions of the taxpayer is that its services are an integral part of interstate commerce and are exempt from the state taxation at issue both under the Commerce Clause of the United States Constitution[2] and under T.C.A. § 67–3007, which exempts "bona fide interstate commerce."

■ Upon the facts of this case we find untenable the taxpayer's argument that its shipyard activities are beyond the

---

1. It is apparently conceded that if any of the serviced units were engaged only in intrastate commerce, appellant's repair services on those units would be taxable.

2. U.S. Constitution, Article 1, Sec. 8, clause 3.

taxing authority of this State. Tennessee sales and use taxes are imposed to the fullest constitutional extent of the State's taxing power. *Texas Eastern Transmission Corp. v. Benson*, 480 S.W.2d 905 (Tenn. 1972). The taxes are levied upon the privilege of selling at retail, using or consuming tangible personal property in the state and the performing of repair services to such property. *See* T.C.A. §§ 67–3002, 3003. The incidence of the sales tax is upon the seller, not upon the purchaser. *Central Transport Co. v. Atkins*, 202 Tenn. 512, 517, 305 S.W.2d 940 (1956).

■ We find unpersuasive the taxpayer's contention that the barges "do not come to rest" in Tennessee while they are undergoing renewal or repair. The evidence does not support its claim that there is an insufficient nexus between Tennessee and the subject transactions to justify the imposition of a local sales or use tax. Not only is the taxpayer a Tennessee corporation, but all of the services are performed and all of the parts are sold by it in the state. Some of the parts are kept in inventory. Others have to be ordered to specifications from manufacturers in Chattanooga or in Birmingham. However, the actual sale or use of all of the parts by the taxpayer occurs at its Hale's Bar facilities.

■ The fact that the barges will be placed back into interstate commerce and will be used by their respective owners outside of Tennessee does not prevent the imposition of the tax at the place and time when the taxpayer's services and repairs are performed. *See Williams Rental, Inc. v. Tidwell*, 516 S.W.2d 614 (Tenn.1974); *Central Transport Co. v. Atkins*, 202 Tenn. 512, 305 S.W.2d 940 (1956). None of the factors involving a burden upon, discrimination against or improper regulation of interstate commerce which might bring the tax into conflict with constitutional limitations are shown in this record. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), *reh. denied*, 430 U.S. 976, 97 S.Ct. 1669, 42 L.Ed.2d 371 (1977); *see also Denver & Rio Grande Western R.R. v. State Tax Commission*, 11 Utah 2d 301, 358 P.2d 352 (1961), *cert. denied*, 368 U.S. 830, 82 S.Ct. 52, 7 L.Ed.2d 33 (1961)(state sales tax on repair of railway locomotives and freight cars).

Taxpayer places great reliance upon the cases of *Service Merchandise Co. v. Tidwell*, 529 S.W.2d 215 (Tenn.1975) and *Texas Gas Transmission Corp. v. Benson*, 223 Tenn. 279, 444 S.W.2d 137 (1969). The facts of those cases are so entirely different from those presented here that we do not find that either supports the taxpayer's position. Certainly the temporary interruption in transit involved in *Service Merchandise* is not analogous to the planned withdrawal of the barges here, where they first must be unloaded and then consigned to a shipyard for an indefinite period.

■ As an alternative theory, taxpayer asserts that its services in the renewal of barges are non-taxable under the provisions of T.C.A. § 67–3012, exempting sales and transfers by Tennessee dealers of vessels or barges exceeding fifty tons displacement

". . . where the purchaser gives the seller an affidavit that such vessels are being purchased for use in interstate commerce or outside the State of Tennessee; and any such vessel shall also be exempt from use tax so long as it is being used in interstate commerce."

There is no sale or transfer of the vessels involved in the present case. There is insufficient evidence to sustain the taxpayer's argument that renewal of a damaged barge is "in reality" equivalent to a sale. Further there is no evidence that exemption certificates or affidavits are utilized in the placing of orders for renewal. The record shows that this exemption has been granted for towboats built and sold by the taxpayer, but in our opinion the transactions at issue here do not fall within the terms of this statute. Likewise the evidence does not sustain the taxpayer's claim that parts ordered for renewal work are imported into Tennessee or are produced and manufactured in this state for export, so as to be exempt under T.C.A. § 67–3007. Those parts are received and installed by the tax-

**614**

payer's employees at its Tennessee facilities, pursuant to contracts made there.

In oral argument counsel for the taxpayer practically conceded that if its repair and renewal services are taxable, then the service charges for dry-docking and launching are also subject to being taxed. In our opinion these fall clearly within the purview of T.C.A. § 67–3002(c)4(4) and the regulations issued thereunder.

The assignments or error are overruled and the judgment of the Chancellor is affirmed at the cost of appellant.

HENRY, C. J., and COOPER, FONES and BROCK, JJ., concur.