# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 2000 Session

## AMERICAN AIRLINES, INC. v. RUTH E. JOHNSON, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

### Appeal from the Chancery Court for Davidson County
### No. 96-2189-II       Carol L. McCoy, Chancellor

---

### No. M1999-02390-COA-R3-CV - Filed August 16, 2000

---

American Airlines, Inc., appeals the trial court's final judgment denying its request for a refund of use taxes paid on aviation fuel purchased out of state during the years 1992 through 1995. We affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Charles A. Trost and Michael G. Stewart, Nashville, Tennessee, for the appellant, American Airlines, Inc.

Paul G. Summers, Attorney General and Reporter, and Jimmy G. Creecy, Chief Special Counsel, for the appellee, Ruth E. Johnson, Commissoner of Revenue, State of Tennessee.

### OPINION

The material facts in this case are not in dispute. American Airlines is a Delaware corporation which has its principal place of business in Texas. American Airlines is qualified to do business in the state of Tennessee, and it conducts operations at a location in the Nashville International Airport. During the period from January 1, 1992, to December 31, 1995, American Airlines paid over $7 million in use taxes on aviation fuel that it used in its operations at the Nashville airport. American Airlines purchased the aviation fuel outside the state of Tennessee, transported the fuel via pipeline into the state, placed the fuel in storage for an average of fourteen days, and then pumped the fuel into its aircraft at the Nashville airport. Using this fuel, American Airlines' aircraft transported passengers and freight to out-of-state destinations.

In July 1996, American Airlines filed a complaint against the Commissioner of Revenue seeking a refund of the use taxes it paid on aviation fuel from 1992 to 1995. In support of its claim,

American Airlines contended that the fuel was exempt from Tennessee sales and use tax based on the import-for-export exemption contained in Tennessee Code Annotated section 67-6-313(a) (1994). Alternatively, American Airlines contended that it should have been required to pay a use tax only on that portion of the fuel actually used by its aircraft in flight over the state of Tennessee.

Both parties subsequently filed motions for summary judgment on the issue of whether the aviation fuel was subject to the Tennessee use tax. The trial court ruled in favor of the Commissioner, holding that the aviation fuel was subject to the Tennessee use tax and, further, that the fuel was not exempt from taxation under the import-for-export provision contained in section 67-6-313(a).

On appeal, American Airlines contends that the trial court erred in ruling that all of the aviation fuel that it purchased outside the state and loaded into the fuel tanks of its aircraft in Nashville was subject to the Tennessee use tax. Specifically, American Airlines contends that it should not have to pay a use tax on the percentage of the fuel that was "burned off" after its aircraft left the state. Alternatively, American Airlines contends that the fuel "burned off" outside the state was exempt from the use tax under the import-for-export provision of section 67-6-313(a).

We begin our analysis of these issues with the well-established rule that courts must construe tax statutes liberally in favor of the taxpayer and, conversely, strictly against the taxing authority. *See White v. Roden Elec. Supply Co.*, 536 S.W.2d 346, 348 (Tenn. 1976); *Memphis St. Ry. v. Crenshaw*, 55 S.W.2d 758, 759 (Tenn. 1933). Where any doubt exists as to the meaning of a taxing statute, courts must resolve this doubt in favor of the taxpayer. *See Memphis Peabody Corp. v. MacFarland*, 365 S.W.2d 40, 42 (Tenn. 1963); *accord Carl Clear Coal Corp. v. Huddleston*, 850 S.W.2d 140, 147 (Tenn. Ct. App. 1992). Courts may not extend by implication the right to collect a tax "beyond the clear import of the statute by which it is levied." *Boggs v. Crenshaw*, 7 S.W.2d 994, 995 (Tenn. 1928). By the same token, courts must give effect to the "plain import of the language of the act" and must not use the strict construction rule to thwart "the legislative intent to tax." *International Harvester Co. v. Carr*, 466 S.W.2d 207, 214 (Tenn. 1971); *see also Bergeda v. State*, 167 S.W.2d 338, 340 (Tenn. 1943) (indicating that courts "must give full scope to the legislative intent and apply a rule of construction that will not defeat the plain purposes of the act").

In enacting the Tennessee Retailers' Sales Tax Act, the legislature intended "to tax every retail sale of tangible personal property and every use of personal property in this state," unless the legislature expressly excepted the sale or use from taxation. *Shoppers Guide Publ'g Co. v. Woods*, 547 S.W.2d 561, 564 (Tenn. 1977). During the tax period in question, the Retailers' Sales Tax Act imposed a six percent (6%) use tax on tangible personal property that was "used, consumed, distributed, or stored for use or consumption in this state." Tenn. Code Ann. § 67-6-203(a) (1994). The Act contained a separate provision governing the taxation of aviation fuel. That provision imposed a four and one-half percent (4½%) use tax on "the sale, the use, the consumption, the distribution and the storage of aviation fuel that [was] actually used in the operation of airplane or aircraft motors." Tenn. Code Ann. § 67-6-217 (1994). The Act broadly defined "use" as "the

exercise of any right or power over tangible personal property incident to the ownership thereof." Tenn. Code Ann. § 67-6-102(30)(A) (1994).[1]

Citing section 67-6-217, American Airlines contends that the legislature intended to tax only aviation fuel that was "actually used" in the operation of aircraft within the state of Tennessee. American Airlines equates the term "actually used" with "burned off," and it insists that it should only have been taxed for aviation fuel that was "burned off" over Tennessee.

We decline to adopt this interpretation of the statute. Contrary to American Airlines' argument, the Retailers' Sales Tax Act did not limit the taxation of aviation fuel to that "burned off" within the state of Tennessee. Rather, the Act taxed the sale, use, consumption, distribution, or storage of aviation fuel within the state. *See* Tenn. Code Ann. § 67-6-217 (1994). Although the Act required that the aviation fuel be "actually used in the operation of airplane or aircraft motors," *id*., it broadly defined the term "use" to include "the exercise of any right or power over tangible personal property incident to the ownership thereof." Tenn. Code Ann. § 67-6-102(30)(A) (1994).[2] We believe that this definition of the term "use" was broad enough to cover American Airlines' acts of storing the aviation fuel in Tennessee, pumping the fuel into the tanks of its aircraft at the Nashville airport, and then using the fuel in the operation of its aircraft. Accordingly, we reject American Airlines' contention that the term "actually used" should be narrowly defined to include only the fuel that was "burned off" in Tennessee. *See, e.g.*, *Beecham Lab. v. Woods*, 569 S.W.2d 456, 457 (Tenn. 1978) (holding that warehousing and distribution of pharmaceutical samples clearly fell within Act's definition of "use").

On appeal, American Airlines argues that this interpretation of the statute is inconsistent with the remainder of the Retailers' Sales Tax Act, which purports to tax only personal property that "is used, consumed, distributed, or stored for use or consumption *in this state*." Tenn. Code Ann. § 67-6-203(a) (1994) (emphasis added). In light of the legislature's broad definition of the term "use," we do not perceive any inconsistency between the result reached here and other provisions of the Act. In accordance with this definition, American Airlines "used" the aviation fuel when it pumped the fuel into its aircraft for use in the aircraft's operation. We further note that, in making this argument, American Airlines does not describe any specific applications of the use tax that would be inconsistent with our holding today.

American Airlines focuses on the phrase "actually used in the operation of airplane or aircraft motors" to support its contention that it should only have been taxed for that portion of aviation fuel used to power its aircraft while still in the state of Tennessee. Tenn. Code Ann. § 67-6-217 (1994). Again, we decline to adopt such a restrictive interpretation of the statute. We recognize that a portion of the aviation fuel continued to power American Airlines' aircraft after it left the state of Tennessee. Given the legislature's expansive definition of the term "use," however, we conclude

---

[1]Now section 67-6-102(31)(A).

[2]*See supra* note 1.

that the aviation fuel was "used" in the operation of American Airlines' aircraft while still in Tennessee and that such use was taxable.

In urging this court to reverse the trial court's ruling, American Airlines cites an article on the subject of state taxation of jet fuel for the proposition that "[t]he burn-off rule has been adopted by the legislatures of several states, including . . . Tennessee." Robert L. Mandel, *How States Tax Jet Fuel*, 4 St. Tax Notes Mag. 185, 186 (1993). We note, however, that the article's author neither cites any authority for this proposition nor discusses the statutory language upon which he bases this conclusion. Moreover, we find no support for such an apportionment in the Act itself or in case law interpreting the Act. To the contrary, our supreme court has consistently rejected the argument that the Tennessee use tax should be apportioned on the basis of an aircraft's intrastate use to interstate use, reasoning that the Act makes no provision for such apportionment and that the court has no authority to apportion on any basis. *See Service Merchandise Co. v. Jackson*, 735 S.W.2d 443, 445 (Tenn. 1987); *Vector Co. v. Benson*, 491 S.W.2d 612, 615 (Tenn. 1973).

We also reject American Airlines' alternative argument that it was entitled to an exemption for the portion of the aviation fuel that was "burned off" outside the state of Tennessee. In enacting the Retailers' Sales Tax Act, the legislature indicated that it did not intend "to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export." Tenn. Code Ann. § 67-6-313(a) (1994). Citing this provision, American Airlines contends that the aviation fuel that remained in its aircraft after the aircraft left the state of Tennessee was being exported and, thus, was exempt from taxation under the import-for-export provision.

We conclude that this argument lacks merit. Although the rule is well-established that taxing legislation should be liberally construed in favor of the taxpayer and strictly construed against the taxing authority, it is an equally important principle of Tennessee tax law that "exemptions from taxation are construed against the taxpayer who must shoulder the heavy and exacting burden of proving the exemption." *Rogers Group, Inc. v. Huddleston*, 900 S.W.2d 34, 36 (Tenn. Ct. App. 1995). The exemption "must be expressed in clear language which includes the taxpayer," and it "must not be broadened beyond the command of the provision." *Sears, Roebuck & Co. v. Woods*, 708 S.W.2d 374, 378 (Tenn. 1986). The exemption "must positively appear and will not be implied." *LeTourneau Sales & Serv., Inc. v. Olsen*, 691 S.W.2d 531, 534 (Tenn. 1985). "Every presumption is against the exemption and a well-founded doubt is fatal to the claim." *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994); *United Canners, Inc. v. King*, 696 S.W.2d 525, 527 (Tenn. 1985).

Applying these rules of construction, we conclude that American Airlines has failed to demonstrate that its use of aviation fuel was entitled to the import-for-export exemption contained in section 67-6-313(a). In construing this provision, our supreme court has indicated that "no one incurs tax liability with respect to goods by virtue of their transportation through this State in the channels of interstate commerce;" however, "any stoppage or bringing to rest these goods within the State for sale at retail, use, consumption, distribution or storage for subsequent use, does subject such goods to the taxing power of the State." *Texas Gas Transmission Corp. v. Benson*, 444 S.W.2d

137, 139 (Tenn. 1969). In the present case, American Airlines brought the aviation fuel into the state of Tennessee, stored the fuel in Tennessee, and subsequently used the fuel in the operation of its aircraft in Tennessee. Under these facts, American Airlines could not claim the import-for-export exemption contained in the Act.

Our denial of the claimed exemption is supported by our supreme court's decision in *Serodino, Inc. v. Woods*, 568 S.W.2d 610 (Tenn. 1978). In that case, the taxpayer ordered parts from out of state, brought the parts into Tennessee, and installed the parts on barges that it was repairing or renewing. *See Serodino*, 568 S.W.2d at 613. Thereafter, the barges were placed back into interstate commerce and used by their respective owners outside of Tennessee. *See id*. Among its other claims, the taxpayer argued that the parts ordered for renewal work were exempt from taxation under the Act's import-for-export provision. *See id*. The supreme court rejected this argument, reasoning that

> the evidence does not sustain the taxpayer's claim that parts ordered for renewal work are imported into Tennessee or are produced and manufactured in this state for export, so as to be exempt under T.C.A. § 67-3007 [now section 67-7-313(a)]. Those parts are received and installed by the taxpayer's employees at its Tennessee facilities.

*Id*. at 613-14.

We similarly conclude that the aviation fuel purchased by American Airlines was not entitled to the import-for-export exemption. Just as the barge parts were received and installed by the taxpayer at its Tennessee facility, the aviation fuel was received by American Airlines and pumped into its aircraft at the Nashville airport. The fact that the barge parts and aviation fuel were subsequently used in states other than Tennessee did not bring them within the Act's import-for-export exemption.

In so holding, we distinguish the cases cited by American Airlines because, in those cases, no portion of the goods for which the exemption was claimed was distributed or used in the state of Tennessee. *See Beecham Lab. v. Woods*, 569 S.W.2d 456 (Tenn. 1978) (taxpayer withdrew pharmaceutical samples from its Bristol warehouse and distributed samples outside Tennessee); *Young Sales Corp. v. Benson*, 450 S.W.2d 574 (Tenn. 1970) (taxpayer withdrew insulation from its Memphis warehouse and shipped materials to job sites outside Tennessee). Here, American Airlines distributed and began using the aviation fuel within the state of Tennessee.

We also decline to follow the Georgia supreme court's decision in *Undercofler v. Eastern Air Lines, Inc.*, 147 S.E.2d 436 (Ga. 1966). We recognize that the Georgia exemption contained virtually the same language as the Tennessee exemption. Contrary to Tennessee's rules of construction, however, the Georgia court indicated that it was construing the exemption in favor of the taxpayer. *See Undercofler*, 147 S.E.2d at 441.

The trial court's judgment is affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, American Airlines, Inc., and its surety, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE